No. 23-11237
consolidated with
No. 24-10004

---

# United States Court of Appeals for the Fifth Circuit

---

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

---

**ADDENDUM**

---

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

# EXHIBIT A

Case 24-10042 Document 31-1 Page 13 Date Filed 05/17/2024

NO. 22-11242

---

# United States Court of Appeals for the Fifth Circuit

---

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

---

## BRIEF OF APPELLANT TIMOTHY BARTON

---

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

# Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Parties**

   a. **Defendant-Appellant**: Timothy Barton

   b. **Plaintiff-Appellee**: Securities and Exchange Commission

   c. **Intervenors**:

      i. United States of America

      ii. Gillespie Villas LLC

      iii. Venus59 LLC

      iv. TRTX Properties LLC

      v. MXBA LLC

      vi. Titan Investments LLC

      vii. HNGH Turtle Creek, LLC

      viii. Southern Properties Capital, Ltd.

Case: 24-10042 Document: 31 Page: 5 Date Filed: 05/17/2024

d. **Other Personal Defendants** (entity defendants included below)

i. Haoqiang Fu *also known as* Michael Fu

ii. Stephen T. Wall

**2. Attorneys**

a. **For Appellant**: Hunton Andrews Kurth LLP: Michael J. Edney, Ted Huffman, Sean O'Connell, Michael Dingman

b. **For Appellee**: Keefe M. Bernstein, James E. Etri, David B. Reece

c. **For Defendant Stephen T. Wall**: Johnson Vaughn & Heiskell: Michael P. Heiskell

d. **For Intervenor HNGH Turtle Creek**: Kirkland & Ellis LLP: Erin Angela Nealy Cox; Kane Russell Coleman & Logan PC: John Joseph Kane

e. **For Interested Party Maximilien Barton**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

f. **For Intervenors Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, and Titan**

**Investments LLC**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

g. **For Interested Party David Dhiraj Ramolia**: Chandler & Shavin PLLC: Eliot Dana Shavin, Daniel Rasoul Alexander; Chandler Law PC: Corinna Pia Chandler

h. **For Interested Party Palisades-TC, LLC**: Tillotson Law: Jonathan Patton

i. **For Interested Party Circle H Contractors, LP**: Slates Harwell LLP: Aaron Thomas Capps

j. **For Interested Party MFO Venus Development, LLC**: Moss & Associates, LLC: Ian Edward Fullington

k. **For *Amicus Curiae* Cort Thomas**: Brown Fox PLLC: Charlene Cantrell Koonce, Tim Wells

l. **For Intervenor the United States of America**: Renee M. Hunter

m. **For Interested Party Tamamoi, LLC**: Spector & Cox PLLC: Howard Marc Spector

n. **For Interested Party 3820 Illinois, LLC**: Spector & Cox PLLC: Howard Marc Spector

o. **For Interested Party Vertical Street Ventures, LLC**: Winstead PC: Matthias Kleinsasser, Joseph J. Wielebinski

p. **For Interested Party Southern Star Capital, LLC d/b/a Reliance Mortgage Company**: Law Office of Robert W Buchholz PC: Robert W. Buchholz

q. **For Intervenor Southern Properties Capital, Ltd.**: Shamoun & Norman LLP: C. Gregory Shamoun, Brian Keith Norman

**3. Other**

**a. 159 Other Entities Seized**

| | | |
|---|---|---|
| Carnegie Development, LLC (Defendant) | WALL007, LLC (Defendant) | WALL009, LLC (Defendant) |
| WALL010, LLC (Defendant) | WALL011, LLC (Defendant) | WALL012, LLC (Defendant) |
| WALL016, LLC (Defendant) | WALL017, LLC (Defendant) | WALL018, LLC (Defendant) |

| | | |
|---|---|---|
| WALL019, LLC (Defendant) | DJD Land Partners, LLC (Relief Defendant) | LDG001, LLC (Relief Defendant) |
| BM318 LLC | D4DS LLC | D4FR LLC |
| D4KL LLC | Enoch Investments LLC | FHC Acquisition LLC |
| Goldmark Hospitality LLC | JMJ Acquisitions LLC | JMJ Development LLC |
| JMJAV LLC | JMR100 LLC | Lajolla Construction Management LLC |
| Mansions Apartment Homes at Marine Creek LLC | MO 2999TC, LLC | Orchard Farms Village LLC |
| Villita Towers LLC | 126 Villita LLC | AVEG WW, LLC |
| AVG West, LLC fka JMJ Acquisitions, LLC | Barton Texas Water District, LLC | Barton Water District, LLC |
| BC Acquisitions, LLC | BEE2019, LLC | Broadview Holdings, LLC |

| | | |
|---|---|---|
| Broadview Holdings Trust | BSJ Trading, LLC | BUILD VIOLET, LLC |
| Carnegie Development, Inc. | D4AT, LLC | D4AVEG, LLC |
| D4BM, LLC | D4BR, LLC | D4IN, LLC |
| D4MC, LLC | D4OP, LLC | D4OPM, LLC |
| D4SMC, LLC | D4WP, LLC | Dallas Real Estate Investors, LLC |
| Dallas Real Estate Lenders, LLC | Dallas Real Estate Management, LLC | Five Star GM, LLC |
| Five Star MM, LLC | FIVE STAR MM, LLC | Five Star TC, LLC |
| Glenwood (18340) Property, LLC | HR Sterling, LLC | Illuminate Dallas, LLC |
| JB Special Asset, LLC | JMJ Acquisitions Mgmt, LLC | JMJ Aviation, LLC |
| JMJ BLUES TX, LLC | JMJ Centre, LLC | JMJ Development Brasil, LTDA |
| JMJ Development, Inc | JMJ Development Fund | JMJ Development Fund, Inc |

| | | |
|---|---|---|
| JMJ EB5 Fund, LP | JMJ EB5 Fund GP, LLC | JMJ Holdings, LLC |
| JMJ Holdings US LLC | JMJ Holdings USA, Inc. | JMJ Home Building Inc. |
| JMJ Hospitality, LLC | JMJ Hospitality General Trading FZE | JMJ Hospitality UAE |
| JMJ Investments Limited | JMJ Land Acquisition, Inc | JMJ Land Development, Inc |
| JMJ Land Venture, LLC | JMJ MF Development, LLC | JMJ Mezzanine, Inc |
| JMJ Multifamily, Inc | JMJ Offshore, LTD | JMJ Regional Center, LLC |
| JMJ Residential, LLC | JMJ Valley Center, LLC | JMJ VC Management, LLC |
| JMJ148, LLC | JMJAV, LLC | JMJD4, LLC |
| JMJD4Allensville LLC | JMJDWG, LLC | JMJKH, LLC |
| LC Aledo TX, LLC | Lynco Ventures, LLC | Lynn Investments, LLC |

| | | |
|---|---|---|
| Lynco Ventures, LLC | Mansion Apartment Homes at Marine Creek, LLC | MCFW, LLC |
| MCRS2019, LLC | Middlebury Trust | MMCYN, LLC |
| MXBA Managed, LLC | MXBA Services, LLC | Myra Park 635, LLC |
| Northstar 114, LLC | Northstar PM, LLC | One Agent, LLC |
| One Agent Texas, LLC | ONE FHC, LLC | One MFD4, LLC |
| One Pass Investments, LLC | One RL Trust | ONE SF Residential, LLC |
| Residential MF Assets, LLC | Ridgeview Addition, LLC | Riverwalk Invesco, LLC |
| Riverwalk Opportunity Management, LLC | Riverwalk OZFM, LLC | Riverwalk OZFV, LLV |
| Riverwalk QOZBJ, LLC | Riverwalk QOZBM, LLC | Riverwalk QOZBV, LLC |
| Seagoville Farms, LLC | SF Rock Creek, LLC | SK Carnegie, LLC |

Case 22-11004 Document 31 Page 12 Date Filed: 05/17/2023

| | | |
|---|---|---|
| STL Park, LLC | The MXBA Trust | The Timothy L. Barton Irrevocable Life Insurance Trust |
| TLB 2018 Trust | TLB 2019 Trust | TLB 2020 Trust |
| TRWF, LLC | TRWF LODGE, LLC | VenusBK195, LLC |
| VenusPark201, LLC | WRL2019, LLC | 126 Villita Towers, LLC |
| 2999 Acquisitions, LLC | 2999 Middlebury, LLC | 2999 Roxbury, LLC |
| 2999TC Acquisitions, LLC fka 2999TC, LLC | 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC | 2999TC Founders, LLC |
| 2999TC JMJ, LLC | 2999TC JMJ, LLC | 2999TC JMJ CMGR, LLC |
| 2999TC JMJ Equity, LLC | 2999TC LP, LLC | 2999TC JMJ MGR, LLC |
| 2999TC MZ, LLC | 2999TC MM, LLC | TC Hall, LLC |
| Titan 2022 Investment, LLC | Marine Creek SP, LLC | Aledo TX, LLC |

Case: 22-11042 Document: 53-1 Page: 113 Date Filed: 05/17/2023

**b. Interested Parties**

i. Bank of America, N.A. (Respondent)

ii. Maximilien Barton

iii. Circle H Contractors, LP

iv. MFO Venus Development, LLC

v. Palisades-TC, LLC

vi. Southern Star Capital LLC d/b/a Reliance Mortgage Company

vii. Tamamoi, LLC

viii. David Dhiraj Ramolia

ix. 3820 Illinois, LLC

x. Vertical Street Ventures, LLC

**c. Amicus Curiae**

i. Cort Thomas

*/s/ Michael J. Edney*
Counsel for Timothy Barton

## Statement Regarding Oral Argument

Appellant Timothy Barton respectfully requests oral argument. At issue in this appeal is the district court's order approving the sale of significant interests in real property without following the prescribed statutory procedure for doing so. This case presents factual, procedural, and legal nuances such that the ability to question counsel in person may aid the Court in resolving the issues presented.

# Table of Contents


Certificate of Interested Persons .......... ii

Statement Regarding Oral Argument .......... xii

Table of Contents .......... xiii

Table of Authorities .......... xiv

Jurisdictional Statement .......... 1

Statement of the Issues .......... 5

I. Introduction .......... 6

II. Statement of the Case .......... 8

III. Summary of the Argument .......... 17

IV. Argument .......... 20

A. 28 U.S.C. § 2001 governs the sale of real property and interests therein. .......... 21

B. The Receiver's sale in violation of the statute is contrary to the best interests of the receivership estate. .......... 26

C. The District Court's Errors in Appointing and Empowering the Receiver Require Reversal of the DLP Sale Order. .......... 32

V. Conclusion .......... 34

Certificate of Filing and Service .......... 36

Certificate of Compliance .......... 37

## Table of Authorities

**Cases** **Page(s)**

*Acadia Land Co. v. Horuff*,
110 F.2d 354 (5th Cir. 1940) ........ 3, 26, 32

*In re Am. Colonial Broad. Corp.*,
758 F.2d 794 (1st Cir. 1985) ........ 2

*Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*,
No. 03-04-00600-CV, 2005 WL 1583506 (Tex. App.-Austin July 7, 2005) ........ 22, 23

*In re Applied Chem. Magnesias Corp.*,
206 S.W.3d 114 (Tex. 2006) ........ 21

*In re Brin & Brin, P.C.*,
No. 13-13-00324-CV, 2013 WL 3895365 (Tex. App.-Corpus Christi-Edinburg July 23, 2013) ........ 22

*Butner v. United States*,
440 U.S. 48 (1979) ........ 21

*Citibank, N. A. v. Data Lease Fin. Corp.*,
645 F.2d 333 (5th Cir. 1981) ........ 1

*In re City Nat'l Bank*,
257 S.W.3d 452 (Tex. App.-Tyler 2008) ........ 22

*City of Beaumont v. Moore*,
146 Tex. 46 (1947) ........ 22

*Clyde v. Hamilton*,
414 S.W.2d 434 (Tex.1967) ........ 23

*Contimortgage Corp. v. Anglezis*,
173 F. App'x 458 (7th Cir. 2006) ........ 1

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ........ 20

Case: 24-10042 Document: 53-1 Page: 17 Date Filed: 04/01/2024

*Dietrich v. Heintz*,
99 S.W. 417 (Tex. App. 1907) .......................................................... 23, 24

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008) .................................................................. 28

*First Nat'l Bank of Cleveland v. Shedd*,
121 U.S. 74 (1887) ................................................................................. 1

*Indep. Tube Corp. v. Levine*,
80 B.R. 659 (D. Vt. 1987) ...................................................................... 21

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) .......................................................... 14, 33

*Kelley v. Marlin*,
714 S.W.2d 303 (Tex. 1986) .................................................................. 24

*Koon v. United States*,
518 U.S. 81 (1996) ............................................................................ 20, 34

*Latham v. Miller*,
250 S.W.2d 302 (Tex. Civ. App. -Austin 1952) ..................................... 22

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) .................................................................... 2

*Nationwide of Bryan, Inc. v. Dyer*,
969 S.W.2d 518 (Tex. App.-Austin 1998) .............................................. 21

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ........................................................... 20, 32

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
24 F.4th 442 (5th Cir. 2022) ..................................................................... 2

*Quigley v. Bennett*,
227 S.W.3d 51 (Tex. 2007) .................................................................... 22

*Sage v. Cent. R. Co.*,
96 U.S. 712 (1877) ................................................................................... 1

*SEC v. ABS Manager, LLC*,
No. 13CV319-GPC JMA, 2013 WL 1164413 (S.D. Cal. Mar. 20, 2013) ........ 31

*SEC v. Am. Bd. of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987) ........ 28

*SEC v. Barton*,
Case No. 22-11132 (5th Cir. 2022) ........ 6, 8, 14

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) ........ 28

*SEC v. Forex Asset Mgmt. LLC*,
242 F.3d 325 (5th Cir. 2001) ........ 2, 4

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) ........ 20

*SEC v. T-Bar Res., LLC*,
No. CIV.A.3:07CV1994-B, 2008 WL 4790987 (N.D. Tex. Oct. 28, 2008) ........ 26

*T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*,
651 S.W.2d 284 (Tex. App.-Austin 1983) ........ 22

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ........ 20

*Yzaguirre v. KCS Res., Inc.*,
53 S.W.3d 368 (Tex. 2001) ........ 23

**Statutes**

15 U.S.C. § 77t(b) ........ 1

15 U.S.C. § 77t(d) ........ 1

15 U.S.C. § 77v(a) ........ 1

15 U.S.C. § 78u(d) ........ 1

15 U.S.C. § 78u(e) .......... 1

15 U.S.C. § 78aa .......... 1

28 U.S.C. § 1291 .......... 1, 2, 4

28 U.S.C. § 2001 .......... *passim*

28 U.S.C. § 3103(b)(1)(B) .......... 33

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) .......... 21

Federal Rule of Appellate Procedure 4(a)(1)(B) .......... 4

## Jurisdictional Statement

The district court has subject matter jurisdiction over this case under 15 U.S.C. §§ 77t(b), 77t(d), 77v(a), 78u(d), 78u(e), and 78aa, which provide jurisdiction to adjudicate alleged violations of various securities laws. The Securities and Exchange Commission alleges violations of those laws in this matter. **ROA.27–28**. This Court has two independent bases for jurisdiction: the longstanding rule that a judicial order confirming the sale of property is an appealable final order and the collateral order doctrine.

*First,* this Court has jurisdiction under 28 U.S.C. § 1291 because the district court's order was, in effect, an "order confirming a judicial sale of property," which "is a final order." *Citibank, N. A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981); *see Contimortgage Corp. v. Anglezis*, 173 F. App'x 458, 462 (7th Cir. 2006) ("[A]n order confirming sale is final and appealable."). That principle has been black-letter law for 150 years. *See Sage v. Cent. R. Co.*, 96 U.S. 712, 714 (1877) ("[A] decree confirming a sale, if it is final, may be appealed from."); *First Nat'l Bank of Cleveland v. Shedd*, 121 U.S. 74, 85 (1887) (rejecting argument that a property-sale order in receivership proceeding was merely "an

interlocutory decree or order of sale, and not a final decree"); *see also In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801–03 (1st Cir. 1985) (rejecting appeal of order authorizing sale negotiations while noting that parties can appeal from order confirming a sale); *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 165 (9th Cir. 1960) (citing 28 U.S.C. § 1291 as the basis for jurisdiction over, *inter alia*, a receivership liquidation order).

*Second*, and in the alternative, the district court's order "fits within the confines of the collateral order doctrine." *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001). The collateral order doctrine provides appellate jurisdiction when an order "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 448 (5th Cir. 2022) (quotation and original alterations omitted). The district court's order approving the so-called "settlement agreement" that relinquished the property rights at issue meets these requirements.

First, the district court's order conclusively resolves a disputed question: whether the receiver could enter an agreement to dispose of certain property rights of the receivership estate. **ROA.2787–88**.

Next, the question of whether the district court should have approved that agreement is important. As explained in more detail below, the receiver relinquished participation, development, and construction management agreements, and related interests, worth more than $20 million. **ROA.2783.** But the receiver disposed of them all for a mere $750,000, and did so without complying with the statutory requirements of 28 U.S.C. § 2001 that would have prevented that sale from ever occurring. *See* 28 U.S.C. § 2001(b) (prohibiting sale that is below "two-thirds of the appraised value."); *see Acadia Land Co. v. Horuff*, 110 F.2d 354, 354 (5th Cir. 1940) (holding that a sale is void if statutory requirements are not satisfied). That unjustified disposition of property must have a legal mechanism to be remedied on appeal. Otherwise, Appellant and all future similarly-situated parties would be deprived of a means to vindicate their rights, and it would mean that 28 U.S.C. § 2001 is rendered effectively meaningless and unenforceable. And while the district court's sale order is notably separate from the issue

of whether the Appellant is liable for the underlying allegations of securities fraud, the issues with that order are important because the order purports to irreversibly dispose of the Appellant's property rights and interests before he has an opportunity to defend the allegations against him. *Forex Asset Mgmt.*, 242 F.3d at 330 (holding that "distribution of assets" from receivership in SEC action is an important issue that "is separate from the merits of the SEC's complaint").

Finally, the district court's order will be effectively unreviewable on appeal because these interests will be relinquished and difficult to recover "long before the action brought by the SEC is subject to appellate review." *Forex Asset Mgmt.*, 242 F.3d at 330. Thus, even if this Court concludes that the district court's order is not appealable under 28 U.S.C. § 1291, it is appealable under the collateral order doctrine.

The district court issued the appealed order on December 21, 2022. **ROA.2788**. The Appellant noticed this appeal on December 23, 2022, **ROA.2952–53**, within the 60-day period allotted by Federal Rule of Appellate Procedure 4(a)(1)(B). This appeal is therefore timely.

## Statement of the Issues

1. Did the receiver's so-called "settlement agreement" relinquish "realty," "interest[s]" in realty, "or any part thereof" such that the sale of those interests is subject to 28 U.S.C. § 2001(b) and the district court erred in failing to apply that statute?
2. Did the district court err when it held that releasing more than $20 million in property-related rights for $750,000 or four percent of their value, was in the best interests of the estate?

Case: 22-10042 Document: 31 Page: 25 Date Filed: 05/10/2024

## I. Introduction

This case concerns the District Court's supervision of the actions of a court-appointed receiver (the "Receiver"). After the Securities and Exchange Commission ("SEC" or the "Commission") filed a complaint accusing the Appellant of violations of the Securities Exchange Act in the handling of certain loans to certain of the Appellant's real estate development businesses, the District Court appointed a trial lawyer with whom he was acquainted as Receiver. In doing so, the District Court seized any corporation in any way associated with the Appellant, whether or not it was involved in the lending transactions the Commission claimed to be illegal. The District Court did so solely based on allegations of the Appellant's wrongdoing, before the SEC had submitted any evidence supporting those allegations. And the District Court bypassed the Commission's recommended choice for Receiver—an experienced Dallas real estate professional who could have competently run the seized businesses—for his trial-lawyer receiver who has embarked on a liquidation spree. Those decisions are under appeal, which this Court is hearing on an expedited basis on May 1, 2023. *SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022).

The District Court is not closely supervising the Receiver's work, even when required by law to do so. The order currently under appeal is among the most glaring examples. Through the order, the District Court approved the sale of property rights—scheduled to pay one of the Appellant's corporate entities seized by the Court more than $20 million—for $750,000 or 4 percent of its value. That was error.

First, federal law requires that, before approving a receiver's sale of "realty or interest [therein] or any part thereof," a district court must ensure that the sale satisfies several procedural requirements. 28 U.S.C. § 2001(b). But the District Court in this case ignored that statute. Instead, it permitted the Receiver in this action to sell certain rights and interests in real property, held by entities in the receivership estate, for pennies on the dollar. These rights were created under Texas law, which makes plain that they are interests in realty. Accordingly, Section 2001 clearly applies, the District Court's failure to follow Section 2001 procedures was error, and this Court should reverse. In addition, the Court abused its discretion in holding that the sale of these property rights was in the best interests of the estate. The Court permitted the Receiver to give away more than $20 million in property-related rights,

which were key compensation for development work performed by a company the Court improperly seized and gave to the Receiver. The Receiver said that the Receivership needed cash now, but the District Court engaged in no serious inquiry of whether that was really true, including what other more reasonable sales might be in the pipeline. It is hard to imagine any cash crisis that would justify frittering away $20 million in future payments for a $750,000 now, and none was shown on the record. Finally, the District Court abused its discretion by appointing a Receiver unwilling or unable to carry out the underlying development work to obtain that over $20 million, which in itself is an abuse of discretion.

## II. Statement of the Case

Appellant Timothy Barton was Chief Executive Officer of JMJ Development LLC, a real estate development business, until the District Court displaced him with its receivership order currently under appeal in *SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022). In that capacity, he, through various business entities, acquired three properties, one in Florida and two in Texas. **ROA.2679**. In late 2021, these entities sold those properties to entities affiliated with DLP Real Estate Capital, Inc.

("DLP"). At issue here are the transactions in which the Barton entities sold the two Texas properties. Therein, the Barton entity Orchard Farms Village LLC conveyed its interests in a development property, known as Orchard Farms, to Orchard Farms Ventures, a DLP entity. **ROA.2679**. Likewise, Mansions Apartment Homes At Marine Creek, LLC, a Barton entity, conveyed its interest in another development property, known as Marine Creek, to Marine Creek Ventures, a DLP entity. **ROA.2679**. In addition to scheduled cash payments, these deals involved the DLP entities assigning development, participation, and construction management rights in those properties to various Barton entities. **ROA.2677–80**. Specifically, the DLP entities assigned a development interest in the Orchard Farms property to Orchard Farms Developments, LLC, a participation interest in the Orchard Farms property to Orchard Farms Village, LLC, a development interest in the Marine Creek property to Marine Creek Developments, LLC, a construction management interest in the Marine Creek property to La Jolla Construction Management, LLC, and a participation interest in the Marine Creek to Marine Creek SP LLC, all Barton entities. **ROA.2679–80**.

DLP's assignment of these rights arose contemporaneously with the transfer of fee simple title in the real estate. The participation agreements granted Marine Creek Developments, LLC, interests in the realty in the amount "of 25% of the increased value to the [Marine Creek] project." **ROA.2783**.[1] "[T]he Orchard Farms project had similar terms . . . and was contemplated to result in similar asset value and returns." **ROA.2783**. All of these fees were keyed to the ultimate value of the developed real estate asset at completion of development or sale. The development and construction management interests were granted to the other Barton entities for 2.5% and 3% of "total development costs," respectively. **ROA.2783**.

According to memoranda of agreement filed in the public records of Tarrant County, Texas, with respect to the participation agreements, the DLP entities expressly conveyed these interests "[i]n further consideration" of "the sale of the Land and assignment of associated

[1] Although the record only provides this level of detail on the Marine Creek development, "the Orchard Farms project had similar terms as the Marine Creek property . . . [and] was contemplated to result in similar asset value and returns," **ROA.2783**, as evidenced by the near-identical terms of the participation agreements recorded in the Tarrant County records. **ROA.2761–2781**.

Case: 22-10042 Document: 31 Page: 28 Date Filed: 04/10/2024

development rights" from the Barton entities to the DLP entities. **ROA.2781**; **ROA.2772**.

Moreover, these interests were tied to the land. The publicly-filed memorandum agreements expressly recited covenanting for the participation interests "*[i]n further consideration*" of "the sale of the Land and assignment of associated development rights" from the Barton entities to the DLP entities. **ROA.2781** (emphasis added); **ROA.2772** (same). The "covenants, conditions, restrictions, easements and agreements" set forth in these documents were defined to "run[] with the land throughout the term of the Participation Agreement[s]." **ROA.2763**; **ROA.2774**. Moreover, the parties agreed that the agreements would bind their "heirs, successors, assigns, executors and administrators." **ROA.2763**; **ROA.2774**.

The participation agreements granted substantial interests in the land to Barton's entities. Just one of these participation agreements holds a value of "approximately $20-23 million from the development of" the property, while "[t]he development and construction management

Case: 22-11002 Document: 31 Page: 29 Date Filed: 05/17/2023

agreements would lead to millions more in compensation." **ROA.2783**.[2] The other agreements "had similar terms" and were "contemplated to result in similar asset value and returns." **ROA.2783**. The Barton entities' interests is tied up in the realty itself and will not be subject to payment until a final sale of the property.

In late 2022, the District Court seized the Barton entities—including all their assets and interests in the Marine Creek and Orchard Farms properties—in connection with a civil securities proceeding filed by the SEC. On September 23, 2022, the SEC filed the instant case alleging that nine different entities formed by and named after another Dallas real estate developer, Stephen Wall (the "Wall Entities"), improperly obtained loans from Chinese nationals in connection with several real estate development projects. **ROA.29–43**. Three days later,

[2] The Appellant presented evidence to the district court that "[t]he business documents describing the project scope and valuations are at . . . offices seized by the Receiver," and that "[i]f those documents were produced," it is likely that they "would provide further documentary support for the" Appellant's valuation of the agreements. **ROA.2784**. Notably, the District Court severely expedited briefing on this motion, such that no time was permitted for any discovery. **ROA.17** (reflecting electronic order requiring response to the Receiver's motion by "close of business" on December 20, 2022, five days after the Receiver filed his motion).

Case: 22-11002 Document: 31 Page: 30 Date Filed: 05/10/2023

the SEC filed an Expedited Motion for Appointment of Receiver seeking to impose a receivership over any entity that Barton "directly or indirectly control[led]," regardless of whether any particular entity received any of the loan proceeds of which the SEC is complaining. **ROA.119–145**. On October 18, 2022, the District Court granted the SEC's motion, with no explanation or justification other than adopting the SEC's proposed order directed at empowering the Receiver nearly verbatim. **ROA.594; ROA.606–07**. The District Court's only change was to skip over the Commission's recommended candidate for receiver, a real estate professional who could have easily understood and handled Orchard Farms and Marine Creek assets, for a trial lawyer that the District Court preferred. **ROA.143** (SEC motion requesting David Wallace as receiver); **ROA.607** (District Court order appointing Cortney Thomas as receiver). Ultimately, the District Court seized 164 corporate entities, including entities controlled by the Appellant's son, although the vast majority of these entities are not named as defendants or relief defendants in the lawsuit. **ROA.2610–14.**

The Appellant has repeatedly moved the District Court to excise entities from the receivership estate that have nothing to do with the

SEC's claims. *See, e.g.*, **ROA.1095**. But the District Court has repeatedly denied the Appellant's requests, often with no explanation as to why. **ROA.1183–88**.

On November 17, 2022, the Appellant filed a notice of appeal of the District Court's orders appointing the Receiver over his companies. **ROA.1190**. In that appeal, the Appellant argues that, *inter alia*, the SEC did not establish a basis to impose a receivership over the vast majority of entities that are now in receivership. Most directly, the Appellant raises the SEC's failure to follow this Court's precedent in *Janvey v. Adams*, which prohibits the imposition of receivership over any non-defendant entity unless the movant "establish[es]" that the entity "(1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." 588 F.3d 831, 834 (5th Cir. 2009). That appeal is fully briefed and is scheduled for expedited oral argument on May 1, 2023. *SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022) [Docket No. 77].

While that appeal has been pending, the Receiver has rushed to permanently sell tens of millions of dollars of property owned by many of the entities which the Appellant has directly challenged under precedential law as being improperly added to the receivership. That

includes the Receiver's efforts to dispose of valuable realty interests belonging to the five entities with interests in Marine Creek and Orchard Farms at issue in the present appeal.

On December 15, 2022, the Receiver moved to ratify a so-called "settlement agreement" with the DLP entities, by which the Receiver would relinquish the property interests held by the receivership estate in Marine Creek and Orchard Farms for a cash payment of $750,000. **ROA.2677.** The next day, the District Court dramatically expedited the briefing schedule, requiring a response in five days rather than the 21 days ordinarily provided. **ROA.17**. The Appellant objected to the proposed transaction as the Receiver provided scant documentation to support his assertions, the transaction would upend the status quo, and the transaction concerned the sale "realty or [an] interest therein" such that any sale must proceed under the auspices of 28 U.S.C. § 2001. **ROA.2749–56**. In the face of the Appellant's objection, the Receiver's principal justification for this fire sale was an alleged acute need for cash to run the corporations under Receivership. On December 21, 2022, the District Court granted the Receiver's motion without engaging with those objections, merely "not[ing] that the Receiver was not obligated to obtain

Case: 22-10042 Document: 31 Page: 33 Date Filed: 05/17/2024

the Court's approval" and that the transaction "is in the best interests of the Receivership." **ROA.2787–88**. Within hours of the District Court's ruling, the Receiver filed a motion to approve another sale of piece of property that the Appellant had arranged before his removal from management by the District Court. The Receiver thus knew that the Appellant would not have opposed the transaction, that it would raise millions of dollars in operating cash, and that it would have undermined any claim of a cash flow crisis. **ROA.2789**. Weeks later, the Receiver petitioned the Court to pay himself and his law firm partners $349,868.70 from the proceeds of this DLP sale, a request the District Court promptly approved. **ROA.3455**; ECF No. 195 (order granting fee application).

The Appellant filed this appeal on December 23, 2022. **ROA.2952**. That same week, the Appellant separately moved to stay the District Court's DLP order. **ROA.2957**. That motion remains pending in the District Court.

While the Appellant had previously appealed the District Court's initial orders appointing a receivership over non-defendant entities, this separate appeal of the District Court's DLP sale order is needed to void the DLP transaction that was consummated in violation of the statute.

## III. Summary of the Argument

The District Court erred when it approved the sale of more than $20 million in property rights for just a few hundred thousand dollars in cash today. First, that sale never would have survived the procedures Congress required through 28 U.S.C. § 2001 for the sale of a realty interest, which the District Court bypassed. Those procedures must precede court approval of the sale of a realty interest, not just sale of the actual real estate itself. 28 U.S.C. § 2001 (requiring these procedures for private sales of "realty or interest or any part thereof"). And, under Texas law, the participation, development, and construction management interests that the Receiver purported to sell are realty interests. But the Receiver did not follow the requirements of Section 2001, the District Court did not enforce them, and, worse still, the District Court held that the Receiver need not seek court approval of the sale in the first place. **ROA.2787–2788**. The court provided no written explanation for that holding, nor did it engage with the Appellant's arguments that the Receiver was selling interests in realty.

Next, the District Court erred by holding this transaction is in the best interests of the receivership estate. That much is evident from the

fact that the Receiver could not have satisfied 28 U.S.C. § 2001 with his showing. Section 2001 prohibits any private sale "at a price less than two-thirds of the appraised value" of the property. 28 U.S.C. § 2001(b). Even the participation interest in the Marine Creek property alone will, when it accrues, net "approximately $20-23 million." **ROA.2783**. The Receiver's asking price for *all* of the Barton entities' interests was $750,000. **ROA.2681**. That sum would not pass muster under Section 2001 for a sale of the participation agreement in Marine Creek alone, as it amounts to less than 4 percent of that agreement's value, far less than the two-thirds floor that Congress set. And the District Court's approval of it was an abrogation of its responsibilities to supervise the actions of the Receiver.

As an initial matter, this fire sale is completely divorced from the purposes of a receivership that is imposed before any evidence that the Appellant is liable is adduced, much less before a judgment for that liability is entered. Instead, a pre-judgment receivership is supposed to maintain the status quo and keep assets safe for return to the Appellant (in the event the SEC does not prove its case) or for the compensation of alleged victims (if the SEC eventually does secure a judgment). Here, the

Receiver is seeking permanently to destroy a $20 million asset, before the SEC has produced a single document in discovery, before a trial, or before a judgment. All to generate $750,000, the bulk of which is destined for the professional fees of the Receiver and his litigation law firm colleagues.

Next, the Receiver's claimed reason for approving this sale—to resolve some alleged acute cash flow crisis—rings hollow when considered against the backdrop of this case. The receivership estate contains a substantial number of valuable real estate assets, several of which are ripe for sale. Even the sales that the District Court has already approved will generate millions of dollars in liquidity, dwarfing the $750,000 at issue here and underscoring any claim of necessity to be untrue. One prime example is a real estate sale that the Receiver knew would not be opposed, for which it sought permission hours after the District Court's rush approval of the DLP sale. Any conclusion that it is in the best interests of the receivership estate to sacrifice more than $20 million in contracted-for realty interests for a paltry $750,000, all under the guise of an illusory need for cash, is unreasonable and an abuse of discretion. Moreover, the District Court's appointment of a receiver unfit

to handle the underlying transactions, rather than the experienced real estate manager the SEC proposed at the outset, is a direct cause of the errors at issue here and is in itself an abuse of discretion.

Because the District Court's errors permit a sale that never should have occurred, that is contrary to statute, and that is contrary to the best interests of the receivership estate, this Court should reverse the District Court's order permitting the sale and declare it void.

## IV. <u>Argument</u>

This Court reviews a District Court's orders ratifying the actions of a receiver for abuse of discretion. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019); *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). "[A] court's exercise of its discretion is not unbounded; that is, a court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008). Further, "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996); *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). Because the District Court failed to apply 28 U.S.C. § 2001 to a sale of interests in realty, approved a sale that was

not in the best interests of the receivership estate, and erroneously appointed a receiver who is not qualified to manage the underlying businesses, it abused its discretion. This Court should reverse.

### A. 28 U.S.C. § 2001 governs the sale of real property and interests therein.

28 U.S.C. § 2001 sets forth its scope in plain language. It applies to any court-ordered sale of any real property, "interest therein," or "part thereof." 28 U.S.C. § 2001(a)–(b). "The nature of the property interest must be determined by an examination of State law." *Indep. Tube Corp. v. Levine*, 80 B.R. 659, 661 (D. Vt. 1987) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). Here, that means Texas law.

While real estate is a narrow term, an "interest" in realty includes a broader bundle of rights. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 118 (Tex. 2006). An interest in realty is not limited to fee simple ownership of land. It also includes any encumbrance on the property or its title that "diminishes the value of the [property] and constitutes a burden on its transfer." *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 521 (Tex. App.-Austin 1998) (citing Black's Law Dictionary 527 (6th ed. 1990)). Texas courts have long recognized encumbrances to include interests such as liens, easements, leases,

servitudes, claims, and other charges upon the estate. *See City of Beaumont v. Moore*, 146 Tex. 46, 54-55 (1947); *Latham v. Miller*, 250 S.W.2d 302, 304 (Tex. Civ. App. -Austin 1952); *see also Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.-Austin July 7, 2005) ("Examples of encumbrances include liens, claims, easements, and servitudes."); *In re City Nat'l Bank*, 257 S.W.3d 452, 455 (Tex. App.-Tyler 2008) ("[A]ny deed, contract, judgment, or other instrument . . . that purports to convey any interest in or makes any charge upon the land of a true owner . . . is a cloud upon the legal title of the owner.").

Monetary interests in the value or proceeds of the land, without any right to use the land, also constitute interests in the realty. *See Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007) (holding that an "overriding royalty interest" is an "interest in real estate"); *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 292 (Tex. App.-Austin 1983) (holding that contracts conveying "an overriding royalty or a net profits interest" convey "an interest in land" even though such interests do not encompass "the underlying leases or any oil and gas in place, or a fractional part thereof"); *see also In re Brin & Brin, P.C.*, No. 13-13-00324-CV, 2013 WL

3895365, at *7 (Tex. App.-Corpus Christi-Edinburg July 23, 2013) (holding that a "nonparticipating royalty interest" is a real property interest). Those interests exist in the realty itself as long as the payment rights have not accrued. *See, e.g., Anadarko*, 2005 WL 1583506, at *3 (citing *Clyde v. Hamilton,* 414 S.W.2d 434 (Tex.1967)) ("Under Texas law, unaccrued royalties on oil and gas are interests in realty."). It is only when a monetary interest in the land has fully accrued such that it is presently owed and payable that such interest transforms from one in realty to one in personalty. *See Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 370 (Tex. 2001).!

The same principles apply when an interest in real property may be realized from the ultimate sale of that property. *See, e.g., Dietrich v. Heintz*, 99 S.W. 417 (Tex. App. 1907). In *Dietrich v. Heintz*, a property owner engaged an individual to manage the property and, in exchange, orally promised the worker "an interest in the premises to the extent of $4,000, which he should receive from any sale of the lot." *Id.* at 417–18. When the worker later sought to enforce the property owner's promise, the court held that it was "obvious" his interest was "an interest, to the

extent of $4,000, in land," and that a written agreement would be required to enforce that right. *Id.*

Likewise, in *Kelley v. Marlin*, the plaintiff sought a declaratory judgment clarifying the terms of a will that devised the decedent's estate to his surviving wife, but also specified that the plaintiff was to serve as the sole real estate agent, entitled to a commission, for the sale of any of the real estate so devised. 714 S.W.2d 303, 305 (Tex. 1986). The Supreme Court of Texas held that the will, by promising the plaintiff a future role in and profit from the sale of the land, made him "a conditional beneficiary" such that he had an "interest" that was "an equitable charge upon the land." *Id.*

The Barton entities' interests qualify as interests in realty under this unbroken line of clearly applicable caselaw. The Barton entities transferred realty to the DLP entities, in consideration of which the DLP entities conveyed to the Barton entities "interest[s] in the premises," *Dietrich*, 99 S.W. at 417–18, that will accrue when the properties themselves are sold. That was the clear goal of the parties. The memoranda of agreement recite the Barton entities' "right to participate in the Achieved Increased Value" of the real property that includes a

share of proceeds "arising from any near-term sale or condemnation of all or any portion of the Property," **ROA.2761**; **ROA.2773**, and that these rights are to "be construed as covenants running with the land throughout the term of the Participation Agreement" and as "binding upon . . . the heirs, successors, assigns, executors and administrators of the parties." **ROA.2763**; **ROA.2774**. Underscoring the fact that these interests were in realty, the Receiver's settlement agreement required, as part of the sale of those interests, that a quitclaim instrument be filed of public record to dispose of the Barton entities' interests in the Orchard Farms and Marine Creek estates. **ROA.2688**. No such instrument would have been required if no realty interests were in play.

In sum, the Barton interests have unaccrued realty interests in the land at issue. The DLP entities conveyed those interests in consideration of the sale of the land itself, and they will not accrue until "the Achieved Increased Value" is reached, or the land is sold. Until then, those interests lie with the land and are a charge against it. The interests the Receiver attempted to release in his agreement are, therefore, interests in the land and cannot be sold without satisfying 28 U.S.C. § 2001.

Case: 24-10042 Document: 31 Page: 43 Date Filed: 04/01/2024

### B. The Receiver's sale in violation of the statute is contrary to the best interests of the receivership estate.

Congress enacted Section 2001 of Title 28 to ensure that receivers entrusted with the care of a third-party's property do not sell it without some procedures protecting the best interests of that third party. Congress enacted the statute "to protect against the high opportunity for fraud inherent in private sales of realty." *SEC v. T-Bar Res., LLC*, No. CIV.A.3:07CV1994-B, 2008 WL 4790987, at *4 (N.D. Tex. Oct. 28, 2008). That is why the statute requires that a receiver provide notice to all interested parties of a proposed sale, that any sale be supported by independent valuations, and that no interest in property be sold for less than two-thirds of its appraised value. 28 U.S.C. § 2001(b). The Fifth Circuit has expressed its concern with ensuring these requirements are met such that any attempted sale in violation of the statute must be reversed and rendered void, without further analysis. *Acadia Land Co.*, 110 F.2d at 354.

Here, none of the procedural protections set forth in the statute was satisfied at the district court level. The Receiver provided neither statutory notice nor appraisals. The final contract price disposed of more than $20 million of property rights for $750,000. This is four percent of

the value of the realty interests, nowhere in remote sight of the two-thirds of appraised value requirement set by Congress. Had the Receiver complied with the statute, this unjustified loss to the estate would have been scrutinized and likely would have been stopped.

The Receiver presented no legitimate justification for its decision to sale the estate's property interests on the time and terms in which the contract was consummated. At the time of the District Court's order confirming the sale to DLP, the receivership had been in place for two months. **ROA.605** (appointing the Receiver on October 18, 2022); **ROA.2787** (confirming sale on December 21, 2022). The Receiver then was still claiming to be in the process of trying to get a grasp on the assets and businesses of the estate, and to gather funds belonging to it. **ROA.1215–16**. Not only did the Receiver not understand the businesses, he also did not understand the contractual obligations and duties of the businesses under his control. *See, e.g.*, **ROA.2680–81**. It is for that reason, to allow the Receiver to come up to speed, that the District Court's Receivership Order stayed "[a]ll civil legal proceedings of any nature" that involve "the Receiver . . . any Receivership Property . . . any of the Receivership Entities . . . or, . . . any of the Receivership Entities' past or

present officers, [etc.]." **ROA.621**. The state of the receivership was thus not one in flux and not in which decisions needed to be made to liquidate important contractual and property interests of the estate. It certainly was not the time to dispose of some of the most valuable assets under the Receiver's control.

Indeed, dumping an asset worth more than $20 million dollars for some short-term cash fix of a few hundred thousand is inimical to the purpose of a prejudgment receivership. There is no evidence of, much less a judgment for, wrongdoing on the part of the Appellant, such that it is now time not only to gather all his assets but also to start liquidating them to satisfy a judgment. A prejudgment receivership, at its outer limits, is for the safekeeping of assets and preservation of the status quo until liability can be finally determined, and the assets returned to the defendant or used to address some liability the SEC actually has been able to prove. *See Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reiterating "strong reservations" as to receivership liquidations); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (criticizing "the use of receivers to effect the [liquidation] of a defendant firm in litigation under the Securities Act or the Securities Exchange Act"); *SEC v. Current*

*Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets or declaring bankruptcy is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment."). There is no universe in which throwing away a $20 million asset for pennies on the dollar can be squared with the purpose of a prejudgment receivership. To permit it was an abuse of discretion by the District Court.

There also was no acute cash-related need to fire-sale valuable assets of the estate in its second month. When the Receiver filed his motion seeking confirmation of the DLP sale claiming to need to "bring[] much needed capital into the Receivership Estate," **ROA.2681**, the factual record reflects the opposite. On *the same day* that the Receiver moved for the District Court's approval of the DLP agreement, the Receiver entered into a contract to sell the Frisco Gate property for $9 million. **ROA.2791** (stating December 15, 2022 contract date); *see* **ROA.2677** (Motion to Ratify Agreement made on December 15, 2022). As the Receiver admitted, the Frisco Gate sale will net "approximately $2 [million]" in cash for the receivership estate. **ROA.2997**. But the Receiver put the Frisco sale in his back pocket, chose not to disclose to

the Court it was coming, claimed that same day that the DLP sale needed to be approved to solve an asserted cash crisis, **ROA.2681**, and waited to move for approval of that Frisco Gate sale until *one day* after the District Court's order ratifying the Receiver's agreement with DLP. **ROA.2787**. It is impossible to square the Receiver's chosen order of presenting matters to the Court and selective nondisclosures of other assets incoming to the estate with the Receiver's claimed cash crisis as a justification for the DLP sale or his duty of full candor to the Court. With the Frisco Gate sale poised to solve any liquidity problems, any claimed cash crisis was easily fixed and it made little sense to sacrifice over $20 million instead.

Since the DLP sale was confirmed, the Receiver has not identified any cost or expense of any receivership entity requiring the influx of $750,000 in the opening days. In fact, the Receiver admitted in a district-court filing that the "rental income" from a single property was "$108,460.28" for the Fourth Quarter of 2022, while the "[t]otal expenses" for the receivership estate over that same period amounted to "$110,594.98." **ROA.3224**. In short, the income from a single property came only $2,134.70 shy of covering the expenses of the entire

receivership estate. The existing funds from the opening days of the estate—not even considering the additional $2 million in cash resulting from the Frisco Gate sale—have been more than sufficient to pay the estate's ordinary expenses. Indeed, the only thing that the Receiver has done with the $750,000 received from the DLP sale is to use those funds to pay his professional fees and those of his partners at the litigation firm from which he hails. Specifically, the Receiver sought a $349,868.70 fee award just eight weeks after the Court's approval of the DLP order, and the District Court quickly approved it over the Appellant's opposition, despite most receivers awaiting winding up of the estate for payment of professional fees. **ROA.3455**; ECF No. 195 (district-court order approving fee application). Such payments at the outset have only served to dissipate the estate's assets. *See, e.g., SEC v. ABS Manager, LLC*, No. 13CV319-GPC JMA, 2013 WL 1164413, at *8 (S.D. Cal. Mar. 20, 2013). And they are no reason to sacrifice over $20 million in realty interests for $750,000 simply to pay a receiver's bills, which could be paid through other cash and property of the estate.

In sum, the Receiver's lack of legitimate justification for its sale of the property underscores the emphasis this Court has placed on the

Case: 24-10042 Document: 53-1 Page: 49 Date Filed: 05/17/2024

statutory requirements and safeguards set forth in 28 U.S.C. § 2001(b). But the District Court ignored every red flag, proceeding instead to pen a conclusory approval of the Receiver's request to liquidate over $20 million in assets for pennies on the dollar. For good reason, that sale is void and reversible as a matter of law on procedural grounds. *See Acadia Land Co.*, 110 F.2d at 354. And, such a transaction cannot, under the circumstances, be in the best interests of the receivership estate. Approving the sale was an abuse of discretion.

### C. The District Court's Errors in Appointing and Empowering the Receiver Require Reversal of the DLP Sale Order.

The Appellant also is separately appealing the District Court's order appointing the Receiver and seizing what became 164 corporations, based solely on the SEC's allegation that several lending transactions violated the Securities Exchange Act of 1934. The District Court blew through the Appellant's property rights, without any showing that seizing all the Appellant's property was necessary to prevent asset flight (after all, nearly all the subject assets are Texas real estate). *Netsphere,* 703 F.3d at 305. Nor was any showing made that corporations or assets accumulated over the 30-year course of the Appellant's business had

anything to do with the SEC's allegations about particular lending agreements in 2017 and 2018. *Janvey*, 588 F.3d at 834. Instead, the District Court just signed the SEC's proposed order. This receivership order could have been entered in any case the SEC claims wrongdoing; there was no effort to justify the order for this Appellant under the evidence—or not in this case—that the SEC provided.

These errors are presented in Appeal No. 22-11132 before this Court and scheduled to be argued on May 1, 2023. Findings of error in that case should lead to the summary reversal of the order approving the DLP sale at issue in the instant appeal. In particular, the District Court's error of bypassing the Commission's recommendation of a receiver with experience in real estate for a trial lawyer with which he is familiar is amplified in the District Court's approval of the DLP sale. In other settings, Congress has recognized that managing a real estate development business requires special skill and that a receiver appointed over a real estate business must have experience in that industry. *See* 28 U.S.C. § 3103(b)(1)(B). Although the District Court provided no detail for its finding the sale was in the best interest of the estate, one of the Receiver's excuses for the sale was that he lacked the capacity to carry

out whatever minimal development responsibilities remained in bring the development to full fruition. **ROA.2680–81**. For $20 million, perhaps he should have hired someone. But this particular excuse would not have been a problem if the District Court had not abused his discretion and eschewed appointment of a receiver experienced in real estate development. That error made the Receiver's attempts recklessly to liquidate assets rather than manage them to maturity a predictable *fait accompli*. And the District Court's approval of the DLP sale should be reversed for that reason too.

## V. Conclusion

The District Court's failure to apply 28 U.S.C. § 2001 and its holding that the Receiver need not satisfy that statute were errors of law. Errors of law are, "by definition," abuses of discretion. *Koon*, 518 U.S. at 100. The District Court further abused its discretion when finding the proposed sale in the best interests of the estate. This Court should therefore reverse the District Court, remand with instructions to declare the Receiver's transaction with DLP to be void, and further instruct that any sale of realty interests like those at issue here must take place under the conditions prescribed in 28 U.S.C. § 2001.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Michael J. Edney*
Michael J. Edney
Michael Dingman
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*
*mdingman@huntonak.com*

Ted A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-3000
*thuffman@huntonak.com*

ATTORNEYS FOR APPELLANT
TIMOTHY LYNCH BARTON

April 11, 2023

## Certificate of Filing and Service

I hereby certify that on April 11, 2023, this brief was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

*/s/ Michael J. Edney*

Case: 22-11001 Document: 31 Page: 54 Date Filed: 05/17/2023

## **Certificate of Compliance**

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 6,925 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael J. Edney*

NO. 22-11242

---

# United States Court of Appeals for the Fifth Circuit

---

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

---

**REPLY BRIEF OF APPELLANT TIMOTHY BARTON**

---

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

Case: 22-11042 Document: 54-1 Page: 5 Date Filed: 05/05/2023

## Table of Contents

Table of Contents ........ ii
Table of Authorities ........ iii
I. Introduction ........ 1
II. Argument ........ 2
A. The District Court Committed Reversible Error in Approving the DLP Sale Absent Satisfaction of 28 U.S.C. § 2001 ........ 2
B. The Receiver's Actions Were Not in the Best Interests of the Estate ........ 8
C. The SEC Makes No Mention of the District Court's Errors in Appointing and Empowering the Receiver ........ 12
D. This Court Has Appellate Jurisdiction Under 28 U.S.C. § 1291 or, Alternatively, the Collateral Order Doctrine ........ 13
III. Conclusion ........ 17
Certificate of Filing and Service ........ 18
Certificate of Compliance ........ 19

# Table of Authorities

**Cases** **Page(s)**

*Acadia Land Co. v. Horuff*,
110 F.2d 354 (5th Cir. 1940) .......... 2

*Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*,
No. 03-04-00600-CV, 2005 WL 1583506 (Tex. App.–Austin July 7, 2005, no pet.) .......... 5

*Citibank, N. A. v. Data Lease Fin. Corp.*,
645 F.2d 333 (5th Cir. 1981) .......... 13

*Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*,
882 F.3d 574 (5th Cir. 2018) .......... 3

*In re Hous. Bluebonnet, LLC*,
No. 16-34850, 2020 WL 930111 (Bankr. S.D. Tex. Feb. 21, 2020) .......... 6

*In re KrisJenn, Ranch, LLC*,
No. BR 20-50805-RBK, 2023 WL 2518890 (W.D. Tex. Mar. 14, 2023) .......... 6, 7

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) .......... 12, 14

*Madison v. Gordon*,
39 S.W.3d 604 (Tex. 2001) .......... 15

*Mohawk Industries, Inc. v. Carpenter*,
558 U.S. 100 (2009) .......... 16

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) .......... 14

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
24 F.4th 442 (5th Cir. 2022) .......... 14

*Sage v. Cent. R. Co. of Iowa*,
96 U.S. 712, 714 (1877) .......... 13

*San Antonio Area Found. v. Lang*,
35 S.W.3d 635 (Tex. 2000) .......... 3

*San Antonio Foundation v. Lang*,
35 S.W.3d 640 (Tex. 2000) .......... 5

*SEC v. Am. Bd. of Trade, Inc.*,
829 F.2d 341 (2d Cir. 1987) .......... 14

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) .......... 11

*SEC v. Elliott*,
953 F.2d 1560 (11th Cir. 1992) .......... 9

*SEC v. Forex Asset Mgmt. LLC*,
242 F.3d 325 (5th Cir. 2001) .......... 15

*United States v. 4816 Chaffey Lane*,
699 F.3d 956 (6th Cir. 2012) .......... 16

*United States v. 55 Pub. Square*,
No. 21-10696, 2022 WL 1549161 (11th Cir. May 17, 2022) .......... 15

*United States v. "A" Mfg. Co.*,
541 F.2d 504 (5th Cir. 1976) .......... 13

*W.F. Potts Son & Co. v. Cochrane*,
59 F.2d 375 (5th Cir. 1932) .......... 9

*Wages & White Lions Invs., LLC v. FDA*,
16 F.4th 1130 (5th Cir. 2021) .......... 15

*Westmoreland Brick Co. v. U.S. Malleable Iron Co.*,
16 F.2d 371 (6th Cir. 1926) .......... 13

**Statutes & Other Authorities**

28 U.S.C. § 1291 .......... 13, 14

28 U.S.C. § 2001 .......... 1, 2, 8

28 U.S.C. § 3101(b)(1)(B) .......... 12

Federal Rule of Appellate Procedure 8 .......... 16

Tex. Bus. Orgs. Code § 152.101 .......... 5

# I. <u>Introduction</u>

Taking just the facts that the SEC leaves undisputed, the decision below is breathtaking. The SEC—through the Receiver that it asked the District Court to appoint—does not contest the rights at issue being valued at *over 20 million dollars*. The Receiver gave those rights away, in exchange for $750,000—less than 4% of their value. Why? Because the Receiver wanted his fees paid in 30 days.

Such prompt payment of a bill might be every lawyer's dream. But destroying so much value in one sale to do so certainly is not in the best interest of the estate, much less Mr. Barton, from whom the Government seized these assets.

The District Court might have stopped this course of action, if it had held the hearing and insisted on the independent valuations Congress required for such sales. 28 U.S.C. § 2001. But the District Court skipped that part.

This parade of errors requires reversal of the decision below.

Case: 22-11002 Document: 53 Page: 7 Date Filed: 05/15/2023

## II. Argument

### A. The District Court Committed Reversible Error in Approving the DLP Sale Absent Satisfaction of 28 U.S.C. § 2001

The SEC does not dispute the requirements of 28 U.S.C. § 2001 or that the statute governs the sale of real property interests. SEC Br. at 22-24. Nor does the SEC dispute that a sale of such interest is void if the District Court does not comply with the statute. *Acadia Land Co. v. Horuff*, 110 F.2d 354, 354 (5th Cir. 1940). The SEC's contention on appeal instead is that the Receiver did not sell real property interests requiring application of Section 2001. SEC Br. at 22. But that conclusion does not follow from the factual record or the law.

Not limited to fee simple land title, an "interest in real property," as the SEC acknowledges, "includes any encumbrance on the property' including 'liens, easements, leases, servitudes, and other charges upon the estate.'" SEC Br. 23-24. The Barton entities' interests in the Marine Creek and Orchard Farms properties qualify as such.

The Barton entities received these interests in connection with a December 2021 transaction with DLP. At that time, Barton entities sold their fee simple title in the underlying properties to DLP for upfront cash

Case: 22-11024    Document: 54    Page: 8    Date Filed: 06/05/2023

payments and other interests ceded back in the form of (1) construction and development rights granted to three Barton entities, *and* (2) direct participation interests in the value of the land granted to a fourth and fifth Barton entity. **ROA.2678-80**.[1] The latter of these interests, memorialized in two Participation Agreements, were to be "binding upon . . . the parties [and their] respective successors, assigns [and] all subsequent owners of the Property." **ROA.1787** (§ 11.14); *see also* **ROA.1783** (§ 8.13). *See Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 578 (5th Cir. 2018) (finding real covenant running with the land when contract "expressly stat[ed] that the covenant binds successors").

The SEC argues that the Participation Agreements are "'net-profit agreements' related to 'real estate development project[s]'" that should be treated as "personal property, not real property." SEC Br. at 23 (citing *San Antonio Area Found. v. Lang*, 35 S.W.3d 635 (Tex. 2000). That is not accurate. First, the Participation Agreements are not "net-profit"

[1] The Receiver did not attach copies of the Participation Agreements to his motion seeking approval of the DLP sale. A copy of one Participation Agreement, however, was recently discovered in the record attached to an unrelated filing. **ROA.1777-1805.**

interests in any development operations. The Participation Agreements do not use the term "net profits." That language is the SEC's. The Participation Agreements provide instead that the Barton entities interests are in the value of the land. *See, e.g.,* **ROA.1778** (payment owed based on Fair Market Value or Net Proceeds of sale of Property or, if development completed, its Achieved Increased Value); **ROA.1801** ("Achieved Increased Value" tied to determination of "Fair Market Value"); *id.* ("Fair Market Value" determined based on the sale price or appraisals of the Property); **ROA.1803** ( "Net Proceeds" calculated based on consideration received from sale, condemnation, or exchange of Property). The Barton entities are entitled to those interests regardless of whether DLP starts or completes any development, or earns any revenue from the operations of any development. **ROA.1778-80** (payment on interests due the earlier of (i) the date the property is sold, transferred, or condemned [§§ 2.01, 3.01, 5.02], or (ii) three years, even if no development occurs [§ 1.02]).

The Participation Agreements are not personal in nature either, but impose obligations running with the land. "[A]ll subsequent owners of the Property" are bound, **ROA.1787** (§ 11.14), and the Barton entities'

interests restrict the transfer of the property, **ROA.1782** (§ 7.01), **ROA.1783** (§ 8.09). *See Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.–Austin July 7, 2005, no pet.) ("an interest in realty" includes an encumbrance "that diminishes [the property's] value and constitutes a burden on its transfer").

Second, even if the Barton entities only held net-profits interests, that would not preclude those interests from being treated as interests in the real property. The SEC's reliance on *San Antonio Foundation v. Lang* (SEC Br. at 23-24) in arguing to the contrary is misplaced. 35 S.W.3d 640 (Tex. 2000).[2] The *Lang* decision provides no substantive analysis of the

---

[2] The other cases cited by the SEC are inapposite as well. In *Sewing* (SEC Br. at 23), an appellant attempted to invoke a partnership agreement to obtain a recovery based on real property assets of the partnership. The court observed that the appellant held interests in the partnership but that the partnership agreement did not become a real property contract simply because the partnership held real property. *See also* Tex. Bus. Orgs. Code § 152.101 ("Partnership property is not property of the partners."). In *Helvering* (SEC Br. at 23), the respondent was similarly a "mere owner of shares" in a corporation that owned oil and gas properties. He did not have a direct relationship with the property or any of the other attendant rights that the Barton entities have in this case. In *Berthelot* (SEC Br. at 24), the appellant claimed an interest in the production at a gasoline plant, after the gas was removed from the ground, whereas the present case involves the Barton entities' interests in the real property itself.

"net profits" agreements at issue in that case and it also did not create a new black-letter rule about the treatment of "net profits" agreements. As subsequent case law makes clear, "net-profits interests" may still be treated as "interests in real property." *In re KrisJenn, Ranch, LLC*, No. BR 20-50805-RBK, 2023 WL 2518890, at *15 (W.D. Tex. Mar. 14, 2023) (internal quotations omitted); *see also In re Hous. Bluebonnet, LLC*, No. 16-34850, 2020 WL 930111, at *11 (Bankr. S.D. Tex. Feb. 21, 2020). That is especially so, as here, where the parties' interests are tied to the value of the land, those interests benefit and burden "all subsequent owners of the Property," (**ROA.1787**), the parties provided public notice to potential successors of the "covenants running with the land" "binding upon . . . successors," (**ROA.2763, ROA.2774**), and the parties are in privity of estate from a prior sale transaction on the property, **ROA.2678-80**. *See KrisJenn, Ranch*, 2023 WL 2518890 at *10-18.

For similar reason, the SEC is incorrect that monetary interests tied to the land are not real property interests. SEC Br. at 24. The case law stands contrary. *See* Barton Br. at 22-24 (citing cases). The SEC nonetheless claims the Court should disregard the applicable case law because some of the cases arise in the oil and gas context. SEC Br. at 24.

But that is not a meritorious point of distinction. *See KrisJenn, Ranch*, 2023 WL 2518890 at *15 ("Although Appellees boldly proclaim that 'oil and gas law' is simply inapplicable to the circumstances of this case, they make no attempt to explain such proclamation . . . ."). The real property interests addressed in oil and gas cases emanate from the same principles governing other real property rights in Texas.

The SEC also is off target when it claims "the Participation Agreements themselves make clear that the participation interests are not real-property interests." SEC Br. at 23. The Participation Agreements state no such thing. The relevant contract language, as quoted by the SEC, recites only that the Agreements do not convey "actual fee title." SEC Br. at 6. But as both parties have acknowledged, fee title ownership is not a prerequisite to maintaining a real property "interest" under Texas law: an "interest in realty" also "includes any encumbrance on the property' including 'liens, easements, leases, servitudes, and other charges upon the estate.'" SEC Br. at 23-24; *see also* Appellant's Br. at 21-22 (citing cases).

The SEC makes the same logical error when arguing that an "equitable charge upon the land" does not grant "an *ownership* interest

in or *possession* of the property." SEC Br. at 25 (emphasis added). This argument not only contradicts other parts of the SEC's brief, SEC Br. at 23-24 (acknowledging that "charges upon the estate" are "interest[s] in real property"), but again ownership and possession are not requirements for possessing a real property interest.

It is important to keep in mind what the SEC is fighting against here to avoid Section 2001's application. It is fighting against the requirements that the District Court hold a hearing and have some safeguards to ensure assets are being appropriately valued, before the Receiver that seized them starts selling them forever. Skipping over these straightforward safeguards when the Government has seized someone's property is error and should be reversed.

### B. The Receiver's Actions Were Not in the Best Interests of the Estate

At the time Appellant filed his opening brief in this appeal, the Receiver had used $349,868.70, of the $750,000 in cash obtained from the DLP sale, to pay the fees of his law firm and their retained discovery vendors. **ROA.3455-68**; Dist. ECF No. 195 (District Court approving first fee application). The Receiver has since applied to the District Court for another $444,394.22 in professional fees to be paid from the same

fund. Dist. ECF No. 237. Collectively, these fee applications subsume the entirety of the cash proceeds generated from the DLP sale. The proceeds are not being spent to operate the businesses of the Barton entities or to pay for the expenses of those entities.

The SEC suggests that the Receiver's sale, and use of the sale proceeds to pay his fees, is justified when "the receiver's acts have benefitted that property." SEC Br. at 27 (quoting *SEC v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992)). But the *Elliott* opinion, on which the SEC relies, also concluded the parties should "not [be] liable for the Receiver's time spent on activities adverse to them." *Elliott*, 953 F.2d at 1578.

Fifth Circuit law separately provides that parties improperly placed into receivership, as occurred here,[3] should not be required to pay the fees of an invalidly-appointed Receiver serving no benefit to them. *W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932). The Receiver's liquidation of the Barton entities' interests and use of those proceeds to pay himself and his law firm, with no demonstrable benefit to the Barton entities in question, runs contrary to these principles.

---

[3] *See SEC v. Barton,* Case No. 22-11132 (5th Cir. 2022) (appealing appointment of the receiver).

The SEC next claims the Receiver's actions "maximiz[ed] the value received by the receivership." SEC Br. at 26. But in making that argument, the SEC does not cite to any evidentiary support for its valuation claims. Nor does the SEC respond to actual evidence in the record that the Participation Agreements alone held value of "approximately $20-23 million." Appellant's Br. at 11-12 (citing **ROA.2783**).

The SEC also lacks support for its contention that the DLP sale "reduce[d] contractual damages owed by the receivership entities." SEC Br. at 26. As an initial matter, there was no evidence of actual contract breaches or contract damages before the District Court when approving the DLP sale.

Only after the sale was approved and Appellant had noticed this appeal, the Receiver disclosed copies of letters from DLP—served after the Receiver's appointment—claiming defaults under the development and construction agreements. **ROA.3008-22**; **ROA.2997** (at n. 1); *see also* **ROA.2682**; **ROA.2680**.[4] These letters were rooted in tenuous

[4] The alleged breaches of the construction and development agreements did not affect the Barton entities' rights and enforceability of the Participation Agreements. **ROA.1777-1805**.

allegations and contained no evidence of any contract breach. These letters also complained largely of issues for which DLP or its general contractor (a DLP partner entity) delayed or failed to perform, or related to certain development milestones that were not due to occur for some time. **ROA.3042**. If the Receiver had read the operative contracts, and investigated the surrounding circumstances, he would have realized these issues. However, the Receiver's failure to take such measures, or to realize DLP's ruse, is a testament to the Receiver's mismanagement—not some feather in his cap illustrating good service toward the best interests of the estate.

The DLP fire-sale in month two of the receivership unfortunately is symptomatic of a prejudgment receivership with misaligned objectives from the start. The Barton entities' interests in Marine Creek and Orchard Farms were some of the most valuable estate assets that should have been preserved. Instead, those interests were liquidated at a time when the justifications for doing so did not follow. *See SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets . . . is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of

final judgment."); *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (lamenting the "special additional penalty" that would result by allowing an SEC receiver to liquidate). And they coincided only with a desire by the Receiver to pay his own professional fees.

**C. The SEC Makes No Mention of the District Court's Errors in Appointing and Empowering the Receiver**

Multiple errors by the District Court led to its eventual decision to approve the DLP sale. That sale never would have happened if the District Court had initially followed this Court's precedents in *Netsphere* and *Janvey* when appointing the Receiver. Those precedents would not have allowed a receivership over the non-defendant Barton entities holding interests in Marine Creek and Orchard Farms, much less permit their sale. Nor would the DLP sale have occurred if the District Court had appointed a professional qualified to manage the complex real estate businesses of the Barton entities. *See* 28 U.S.C. § 3101(b)(1)(B). Although the Appellant raised these issues in its merits brief in this appeal (and more comprehensively in Appeal No. 22-11132), the SEC gives them no attention. They alone are sufficient for reversal.

### D. This Court Has Appellate Jurisdiction Under 28 U.S.C. § 1291 or, Alternatively, the Collateral Order Doctrine

The SEC challenges jurisdiction under 28 U.S.C. § 1291 premised on the position that an order confirming a real property sale can only be "final" if the sale is part of a foreclosure or bankruptcy. SEC Br. at 14. The law does not say that.

In *Sage v. Cent. R. Co. of Iowa*, the Supreme Court of the United States set forth the general rule that "a decree confirming a sale . . . may be appealed from" when "it is final." 96 U.S. 712, 714 (1877). The Fifth Circuit adopted this same law as well. *Citibank, N. A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981) ("An order confirming a judicial sale of property is a final order from which an appeal may be taken pursuant to 28 U.S.C. § 1291."); *see also United States v. "A" Mfg. Co.,* 541 F.2d 504, 506 (5th Cir. 1976) ("These cases, spanning a century, clearly establish the rule that an interlocutory order commanding a sale, and one confirming a sale are appealable.").

The case law imposes no further or additional requirement that a sale occur in a third-party foreclosure or bankruptcy context for the sale to be final. *See, e.g., Westmoreland Brick Co. v. U.S. Malleable Iron Co.*, 16 F.2d 371, 372 (6th Cir. 1926) (citing the holding from *Sage* in reversing

order confirming sale order during receivership). That is why the Ninth Circuit took up an appeal of an SEC receivership liquidation order under 28 U.S.C. § 1291, *Los Angeles Tr. Deed & Mortg. Exch.*, 285 F.2d at 165, and the Second Circuit recognized in an SEC receivership proceeding that "an order confirming a judicial sale is final and appealable under Section 1291." *SEC v. Am. Bd. of Trade, Inc.*, 829 F.2d 341, 344 (2d Cir. 1987).

Even if 28 U.S.C. § 1291 were inapplicable, jurisdiction would be proper under the collateral order doctrine—which applies when an order "[1] conclusively determine[s] [a] disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 448 (5th Cir. 2022) (cleaned up). The SEC challenges the third prong, claiming that the Barton entities' interests on appeal can be meaningfully vindicated by other means. SEC Br. at 16-17. Not so.

The District Court's Order approved a sale of real property interests that will be difficult, if not impossible, to unwind if the Appellant is forced to wait until the end of this action to try to do so. *See Opulent Life Church*

*v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that losing an interest in real property constitutes irreparable harm). Absent a reversal, the Barton entities face a stonewall of impenetrable defenses to recover their property in the future—whether by the Government and the Receiver claiming immunity, *Wages & White Lions Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) *and Nat'l Bus. Consultants Inc. v. Lightfoot*, 292 F. App'x 298, 300 (5th Cir. 2008), or the new owner claiming bona fide purchaser status. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). Those impediments make a difference. If the Barton entities are denied the ability to appeal at this time, their property interests soon will be "likely unrecoverable, long before th[is] action brought by the SEC is subject to appellate review." *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001).[5]

In similar asset forfeiture contexts, other circuit courts have found that the collateral order doctrine applies. *See United States v. 55 Pub. Square*, No. 21-10696, 2022 WL 1549161, at *2 n.1 (11th Cir. May 17,

[5] The SEC attempts to distinguish *Forex* on the basis that a non-party was involved in the appeal. That argument ignores that the Barton entities in question are not defendants in the underlying litigation either, and thus in the same position as the aggrieved parties in *Forex*.

2022) (unpublished) ("[A]n interlocutory order authorizing the immediate sale of real property in a forfeiture case is a collateral order subject to immediate appeal."); *United States v. 4816 Chaffey Lane*, 699 F.3d 956, 959 (6th Cir. 2012) (same). The same logic applies here.

The SEC claims, citing *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), that Appellant first should have sought certification of an interlocutory appeal or petitioned for a writ of mandamus, before seeking to appeal under the collateral order doctrine. SEC Br. at 17. That case, however, was about expanding the collateral order doctrine to attorney-client privilege disputes. The Court concluded such disputes can be remedied at the end of the case or by other means not applicable here. In this case, the property will be gone, in the hands of a third party, and there will be little option just to reverse the light switch years from now.

The SEC separately contends that the Appellant should have sought a stay instead of an appeal. SEC Br. at 17. The SEC has the process backwards; no right to direct appeal turns on first seeking a Federal Rule of Appellate Procedure 8 stay pending appeal. This appeal

remains the only option to obtain meaningful appellate review of the issues at hand before further irreparable harm occurs.

## III. Conclusion

This Court should reverse the District Court's Order confirming the Receiver's sale with DLP, and remand with instructions to unwind that transaction *status quo ante*.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Michael J. Edney*
Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

Ted A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-3000
*thuffman@huntonak.com*

ATTORNEYS FOR APPELLANT
TIMOTHY LYNCH BARTON

June 15, 2023

Case: 22-10042 Document: 31 Page: 27 Date Filed: 06/15/2023

## Certificate of Filing and Service

I hereby certify that on June 15, 2023, this document was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

*/s/ Michael J. Edney*

## **Certificate of Compliance**

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 3,424 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael J. Edney*

HUNTON
ANDREWS KURTH

HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL 202 • 955 • 1500
FAX 202 • 778 • 2201

MICHAEL J. EDNEY
DIRECT DIAL: 202 • 778 • 2204
EMAIL: medney@hunton.com

December 22, 2023

**Via ECF**

Mr. Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

Re: *Securities and Exchange Commission v. Barton*, No. 22-11242 (5th Cir.)

Dear Mr. Cayce,

Appellant, Timothy Barton, respectfully responds to the Court's request for letter briefing regarding the effects on the above-entitled appeal of the "District Court's November 29, 2023 orders – including, but not limited to, whether those orders moot the instant appeal in any way." Dkt. No. 75. The Court also asked "whether any entities at issue in the instant appeal that were previously subject to the original and supplemental order appointing a receiver (Dkt. No. 88) no longer fall within the district court's latest order appointing a receiver (Dkt. No. 417)." *Id.*

Addressing the Court's second inquiry, there are two corporate entities at issue in this appeal: (1) Mansions Apartment Homes at Marine Creek, LLC and (2) Orchard Farms Village LLC. These entities held a right to collect fees from and participate in the profits of the ongoing Marine Creek and Orchard Farms development projects. The counterparty to this agreement was DLP Real Estate Capital, Inc. Those participation rights likely would have led to in excess of $20

HUNTON
ANDREWS KURTH

Mr. Lyle W. Cayce
Clerk, United States Court of Appeals for the Fifth Circuit
Page 2

million over the coming years. Dkt. No. 31 at 28. The previous illegally-appointed receiver released those rights to DLP for $750,000 in order to pay the receiver's law firm. *Id.* at 20.

On remand from this Court's order vacating the receivership established in 2022, the District Court created a new receivership that includes any entity associated with the Appellant that holds anything of material value. That order sweeps into the new receivership the two corporate entities at issue in this appeal. NDTX Dkt. No. 417 at 5.

As to the Court's first inquiry, the District Court's order initiating a new receivership does not moot the immediate appeal. This Court vacated the previous receivership as illegally imposed. *SEC v. Barton*, 79 F.4th 573, 581-82 (5th Cir. 2023). That ruling, in turn, invalidated and vacates the prior receiver's actions. The District Court's decision to create a new receivership—a decision that itself is under appeal—is not a continuation or revival of the old receivership.[1]

The defects in the previous, illegally-appointed receiver's attempt and the District Court's approval of the sale of real estate rights to DLP go beyond the previous receiver's illegal appointment. The order approving the sale did not follow Congress's requirements for disposing of realty interests and was manifestly against the receivership estate's best interests, as it sacrificed tens of millions in value to feed the illegally-appointed receiver's law firm a few hundred thousand dollars. *See* Appellant's Merits Brief at 43-49.

The District Court's order creating a new receivership neither "eliminates actual controvers[ies]" nor "render[s] the court no longer capable of providing meaningful relief." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*, 704 F.3d 413, 425 (5th Cir. 2013). This Court can and should reverse and vacate the District Court's order approving the sale to DLP because it was sought by a receiver with no jurisdiction or authority to do so, because it was entered into without regard to the procedures in place for selling realty rights under 28 U.S.C.

[1] That appeal has been docketed in this Court as *Securities and Exchange Commission v.* Barton, No. 23-11237.

§ 2001, and because it was clearly elevating the personal financial interests of the previous, illegally-appointed receiver over those of the estate's beneficiaries. That a newly created receiver might seek authority for the same transaction again and the District Court might approve it eliminates none of these controversies.

Importantly, the District Court's order appointing a "new receiver" is not a continuation or validation of the previous receivership. *Barton*, 79 F.4th at 581. This Court held that the previous receiver was illegally appointed, the Securities and Exchange Commission not having submitted and the District Court not having demanded the evidence necessary to determine the propriety or scope of the "drastic" and "extraordinary remedy" of a receivership. 79 F.4th at 578. This Court therefore "vacated" the order appointing the prior receivership, while leaving open the possibility that the Commission might seek and the District Court might appoint a "new receiver" after remand. *Id.* at 579.

By "vacating" the order creating the prior receivership, this Court rendered that order a legal nullity as if it had never previously existed. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (*en banc*) (finding the a vacated ruling is "officially gone," has "no legal effect whatever," "[is] void," and "[n]one of the statements made [therein] has any remaining force." (alteration in original); *In re Smith*, 165 F. App'x 961, 967 (3d Cir. 2006) (noting that "the 'slate was wiped clean'" where underlying decision was vacated). Vacated orders are treated as though they never went into effect. *See United States v. Harris*, 155 F. Supp. 17, 21 (S.D. Cal. 1957) ("The general rule is that when an order or judgment is vacated the previously existing status is restored and the situation is the same as though the order or judgment had never been made." (quoting A.C. Freeman, A Treatise of the Law of Judgments 594–95 (5th ed. 1925))); *Lufkin v. McCallum*, 752 F. Supp. 421, 423 (N.D. Ala. 1990) (noting that, when opinion was vacated, "it was as if it had never existed").

The Court's choice of the vacatur remedy matters. If the Court had held that the defect was only a failure of explanation, it could have declined to vacate the order and remanded it for the District Court to explain itself. The Court, instead, decided to vacate the order. And appropriately so, because the

Case: 24-10012    Document: 53-1    Page: 4    Date Filed: 12/22/2023



Government had seized the Defendant's assets without making the showings necessary to do so.

The District Court's November 29, 2023, order creating a new receivership does not revive or validate the prior receivership, which this Court vacated and which "no longer exists" as a legal matter. It *only* creates an entirely new one, which is exactly the possibility that this Court contemplated. *Barton*, 79 F.4th at 579 (acknowledging the possibility that the District Court might create a "new receiver" on remand). And that new receivership is, and must be treated as, an entirely separate and distinct legal entity from the initial, vacated receivership. If the new receiver seeks authority to enter into a transaction similar to the one under review here, it will be up to the District Court to decide whether the new receiver should be given that authority, under present circumstances, subject to further review in this Court.

That is why this Court, in the wake of its decision vacating the previous receivership, dismissed as moot Barton's appeals of District Court orders authorizing sales of realty that had not yet been completed. NDTX Dkt. Nos. 360 (Oct. 15, 2023), 366 (Oct. 22, 2203), 367 (Oct. 25, 2023), 368 (Oct. 25, 2023). The vacated receiver was barred from completing them, and if any new receiver wanted to pursue such sales, he would have to ask new permission to do so. The instant appeal falls into another class, where the old receiver already had taken money from a third party in exchange for the realty rights at issue. In that instance, the same reasoning requires the order authorizing the sale to be vacated and the transaction unwound.

***

The District Court's order creating a new receivership has no effect on this Court's ruling holding the prior receivership illegal and vacating it or on what should be done with the actions of the prior receiver. This current appeal of the order authorizing the vacated receiver to sell realty interests to DLP is not moot. This Court should reverse and vacate that order because it was executed by a receiver with no jurisdiction to do so. The property in question would then revert to the corporations owning them. Although the District Court has created a new

HUNTON
ANDREWS KURTH

Mr. Lyle W. Cayce
Clerk, United States Court of Appeals for the Fifth Circuit


receivership over those corporations, it will be up to the new receiver to seek a disposition of that property, for the District Court to evaluate that request based on present circumstances, and for this Court then to review whatever ruling the District Court makes with respect to the new receiver. Even that hypothetical future process may be rendered unnecessary if the new receivership order, now currently under appeal, is overturned.

Respectfully submitted,

Michael J. Edney

Cc: All counsel of record
via the Electronic Court Filing System

## **Certificate of Service**

I, Michael J. Edney, counsel for Appellant, hereby certify that on May 7, 2024, caused a true and correct copy of the Addendum for Appellant Timothy Barton to be filed electronically with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the Appellate CM/ECF System. Participants in this case who are registered CM/ECF users will be served electronically by the Appellate CM/ECF System.

*/s/Michael J. Edney*