**No. 23-11237**
**consolidated with**
**No. 24-10004**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee*,

v.

TIMOTHY BARTON,
*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
No. 3:22-cv-02118-X

---

# BRIEF OF APPELLEE
# SECURITIES AND EXCHANGE COMMISSION

---

MEGAN BARBERO
*General Counsel*

DOMINICK V. FREDA
*Assistant General Counsel*

EZEKIEL L. HILL
*Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.7724 (Hill)
hillez@sec.gov

## CERTIFICATE OF INTERESTED PERSONS

*Securities and Exchange Commission v. Timothy Barton*,
No. 23-11237 consolidated with No. 24-10004

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. 126 Villita LLC, receivership entity
2. 2999 Acquisitions, LLC (Delaware), entity subject to preliminary injunction
3. 2999 Middlebury, LLC (Delaware), entity subject to preliminary injunction
4. 2999 Roxbury, LLC (Delaware), entity subject to preliminary injunction
5. 2999TC Acquisitions, LLC, receivership entity
6. 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC, entity subject to preliminary injunction
7. 2999TC Founders, LLC (Delaware), entity subject to preliminary injunction
8. 2999TC JMJ CMGR, LLC (Delaware), receivership entity
9. 2999TC JMJ Equity, LLC, entity subject to preliminary injunction
10. 2999TC JMJ MGR, LLC (Delaware), entity subject to preliminary injunction
11. 2999TC JMJ, LLC (Delaware), entity subject to preliminary injunction
12. 2999TC JMJ, LLC (Texas), entity subject to preliminary injunction
13. 2999TC LP, LLC (Delaware), entity subject to preliminary injunction

14. 2999TC MM, LLC, entity subject to preliminary injunction

15. 2999TC MZ, LLC (Delaware), entity subject to preliminary injunction

16. 3820 Illinois, LLC, interested party

17. Aledo TX, LLC, receivership entity

18. Adam and Reese LLP, counsel for interested party Bank of America, N.A.

19. AVEG WW, LLC (Delaware), entity subject to preliminary injunction

20. AVG West, LLC, receivership entity

21. Badgley, Serena, interested party

22. Bank of America, N.A., interested party

23. Barbero, Megan, counsel for plaintiff-appellee Securities and Exchange Commission

24. Barton, Maximilien, interested party

25. Barton, Timothy, defendant-appellant

26. Barton Texas Water District, LLC, entity subject to preliminary injunction

27. Barton Water District, LLC (Delaware), entity subject to preliminary injunction

28. Baum, Nathan B., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

29. BEE2019, LLC, receivership entity

30. Bernstein, Keefe M., counsel for plaintiff-appellee Securities and Exchange Commission

31. BC Acquisitions, LLC (Delaware), entity subject to preliminary injunction
32. BM318 LLC, receivership entity
33. Broadview Holdings Trust, receivership entity
34. Brown Fox PLLC, counsel for receiver Cortney C. Thomas
35. BSJ Trading, LLC, entity subject to preliminary injunction
36. Buchholz, Robert W., counsel for interested party Southern Star Capital, LLC
37. BUILD VIOLET, LLC, entity subject to preliminary injunction
38. Butler Snow LLP, counsel for interested party Louisiana National Bank
39. Cain & Skarnulis PLLC, counsel for interested party Serena Badgley
40. Capps, Aaron T., counsel for interested party Circle H Contractors LP
41. Capps and Associates PLLC, counsel for interested party Circle H Contractors LP
42. Carnegie Development, LLC, defendant and receivership entity
43. Carnegie Finance, LLC, entity subject to preliminary injunction
44. Carrillo, C. Alan, counsel for receiver Cortney C. Thomas
45. Chandler & Shavin PLLC, counsel for interested party Dhiraj Ramolia
46. Chandler Law PC, counsel for interested party Dhiraj Ramolia
47. Chandler, Corinna P., counsel for interested party Dhiraj Ramolia
48. Chapple, Ryan E., counsel for interested party Serena Badgley
49. Cheves, P. Kyle, counsel for interested party McCormick 101, LLC

50. Circle H Contractors LP, interested party

51. Clem, David M., counsel for interested party Truist Bank

52. Condo Towers GP, LLC, entity subject to preliminary injunction

53. Conley, Michael A., counsel for plaintiff-appellee Securities and Exchange Commission

54. Cooke, Chris, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

55. Crow, Daniel, interested party

56. Curran, Thomas J., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

57. CYNKFP, LLC, entity subject to preliminary injunction

58. D4AT, LLC, entity subject to preliminary injunction

59. D4AVEG, LLC, entity subject to preliminary injunction

60. D4BM, LLC, entity subject to preliminary injunction

61. D4BR, LLC (Texas), entity subject to preliminary injunction

62. D4DS LLC, receivership entity

63. D4FR LLC, receivership entity

64. D4IN, LLC (Texas), receivership entity

65. D4KL LLC, receivership entity

66. D4MC, LLC (Texas), receivership entity

67. D4OP, LLC, receivership entity

68. D4OPM, LLC, entity subject to preliminary injunction

69. D4SMC, LLC, entity subject to preliminary injunction

70. D4WP, LLC, entity subject to preliminary injunction

71. Dallas Real Estate Investors, LLC, entity subject to preliminary injunction

72. Dallas Real Estate Lenders, LLC (Delaware), entity subject to preliminary injunction

73. Dallas Real Estate Management, LLC, entity subject to preliminary injunction

74. DeYoung, Kyle M., counsel for interested party HNGH Turtle Creek, LLC

75. DJD Land Partners, LLC, relief defendant and receivership entity

76. Edney, Michael J., counsel for defendant-appellant Timothy Barton

77. Enoch Investments LLC, receivership entity

78. Etri, James E., counsel for plaintiff-appellee Securities and Exchange Commission

79. FHC Acquisition LLC, receivership entity

80. First Development Company of Ohio, LLC, interested party

81. Five Star GM, LLC (Delaware), entity subject to preliminary injunction

82. Five Star MM, LLC (Delaware), entity subject to preliminary injunction

83. Five Star MM, LLC (Texas), entity subject to preliminary injunction

84. Five Star TC, LLC (Delaware), entity subject to preliminary injunction

85. Food & Leverage Real Estate, LLC (Delaware), entity subject to preliminary injunction

86. Freda, Dominick V., counsel for plaintiff-appellee Securities and Exchange Commission

87. Fu, Haoqiang, defendant

88. Fullington, Ian E., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

89. Gillespie Villas LLC, receivership entity

90. Gitlin, Jonathan, counsel for interested party First Development Company of Ohio

91. Glenwood (18340) Property, LLC (Delaware), entity subject to preliminary injunction

92. Goldmark Hospitality LLC, receivership entity

93. Green, Gordon W., counsel for interested party Truist Bank

94. Hale, Hon. Harlin, mediator

95. Heiskell, Michael P., counsel for defendant Stephen T. Wall

96. Hicks, Jr., George W., counsel for counsel for interested party HNGH Turtle Creek, LLC

97. Hill, Ezekiel L., counsel for plaintiff-appellee Securities and Exchange Commission

98. HNGH Turtle Creek, LLC, interested party

99. HR Sterling, LLC, receivership entity

100. Hunter, Renee M., counsel for intervenor United States of America

101. Hunton Andrews Kurth LLP, counsel for defendant-appellant Timothy Barton

102. Illuminate Dallas, LLC (Texas), entity subject to preliminary injunction

103. JB Special Asset, LLC, entity subject to preliminary injunction

104. JMJ Acquisitions LLC, receivership entity

105. JMJ Acquisitions Mgmt, LLC, entity subject to preliminary injunction

106. JMJ Aviation, LLC (Texas), entity subject to preliminary injunction

107. JMJ BLUES TX, LLC, entity subject to preliminary injunction

108. JMJ Blues, LLC, entity subject to preliminary injunction

109. JMJ Centre, LLC, entity subject to preliminary injunction

110. JMJ Development Brasil, LTDA, entity subject to preliminary injunction

111. JMJ Development Fund, entity subject to preliminary injunction

112. JMJ Development Fund, Inc, entity subject to preliminary injunction

113. JMJ Development LLC, receivership entity

114. JMJ EB5 Fund GP, LLC (Delaware), entity subject to preliminary injunction

115. JMJ EB5 Fund, LP (Delaware), entity subject to preliminary injunction

116. JMJ Holdings, LLC, entity subject to preliminary injunction

117. JMJ Holdings US, LLC, entity subject to preliminary injunction

118. JMJ Holdings USA, Inc, entity subject to preliminary injunction

119. JMJ Home Building Inc (Nevada), entity subject to preliminary injunction

120. JMJ Hospitality General Trading FZE, entity subject to preliminary injunction

121. JMJ Hospitality, LLC, receivership entity

122. JMJ Hospitality UAE, entity subject to preliminary injunction

123. JMJ Investments Limited, entity subject to preliminary injunction

124. JMJ Land Acquisition, Inc (Nevada), entity subject to preliminary injunction

125. JMJ Land Development, Inc (Nevada), entity subject to preliminary injunction

126. JMJ Land Venture, LLC, entity subject to preliminary injunction

127. JMJ Mezzanine, Inc (Nevada), entity subject to preliminary injunction

128. JMJ MF Development, LLC, entity subject to preliminary injunction

129. JMJ Multifamily, Inc (Nevada), entity subject to preliminary injunction

130. JMJ Offshore, LTD, entity subject to preliminary injunction

131. JMJ Regional Center, LLC (Delaware), entity subject to preliminary injunction

132. JMJ Residential, LLC, entity subject to preliminary injunction

133. JMJ Valley Center, LLC, entity subject to preliminary injunction

134. JMJ VC Management, LLC, receivership entity

135. JMJAV, LLC, receivership entity

136. JMJ148, LLC (Texas), entity subject to preliminary injunction

137. JMJD4, LLC, entity subject to preliminary injunction

138. JMJD4, LLC (Delaware), receivership entity

139. JMJD4Allensville, LLC, entity subject to preliminary injunction

140. JMJDWG, LLC (Texas), entity subject to preliminary injunction

141. JMJKH, LLC, entity subject to preliminary injunction

142. JMR100 LLC, receivership entity

143. Johnson Vaughn & Heiskell, counsel for defendant Stephen T. Wall

144. Johnston, Kenneth C., counsel for interested party Truist Bank

145. Johnston Clem Giffod PLLC, counsel for interested party Truist Bank

146. Kane Russell Coleman & Logan PC, counsel for interested party HNGH Turtle Creek, LLC

147. Kane, John J., counsel for interested party HNGH Turtle Creek, LLC

148. Kearns, David T., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

149. Kirkland & Ellis LLP, counsel for interested party HNGH Turtle Creek, LLC

150. Kleinsasser, Matthias, counsel for interested party Vertical Street Ventures, LLC

151. Koonce, Charlene C., counsel for receiver Cortney C. Thomas

152. LaJolla Construction Management LLC, receivership entity

153. LC Aledo TX, LLC, receivership entity

154. LDG001, LLC, relief defendant and receivership entity

155. Lesser, Joshua A., counsel for interested party Bank of America, N.A.

156. Light, Barbara, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

157. Louisiana National Bank, interested party

158. Lynco Ventures, LLC, receivership entity

159. Lynn Investments, LLC, entity subject to preliminary injunction

160. Mansion Apartment Homes at Marine Creek, LLC, receivership entity

161. Marine Creek SP, LLC, receivership entity

162. McCormick 101, LLC, interested party

163. MCFW, LLC, entity subject to preliminary injunction

164. MCRS2019, LLC (Texas), entity subject to preliminary injunction

165. MF Container, LLC (Delaware), entity subject to preliminary injunction

166. MFO Venus Development, LLC, interested party

167. Middlebury Trust, entity subject to preliminary injunction

168. MMCYN, LLC, entity subject to preliminary injunction

169. MO 2999TC, LLC, receivership entity

170. Moeller, Evan A., counsel for interested party Bank of America, N.A.

171. Moss & Associates, LLC, interested party

172. Munsch Hardt Kopf & Harr, P.C., counsel for interested party The Dixon Water Foundation

173. MV9490 Land Lot, LLC, entity subject to preliminary injunction

174. MV9490 Management, LLC, entity subject to preliminary injunction

175. MV9490, LLC, entity subject to preliminary injunction

176. MXBA, LLC, entity subject to preliminary injunction

177. MXBA Managed, LLC, entity subject to preliminary injunction

178. MXBA Services, LLC, entity subject to preliminary injunction

179. Nealy Cox, Erin, counsel for interested party HNGH Turtle Creek, LLC

180. Norman, Brian K., counsel for interested party Southern Properties Capital, Ltd.

181. Northstar 114, LLC (Delaware), entity subject to preliminary injunction

182. Northstar PM, LLC (Delaware), receivership entity

183. Norton Rose Fulbright US LLP, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

184. O'Connell, Sean B., counsel for defendant-appellant Timothy Barton

185. One Agent Texas, LLC (Texas), entity subject to preliminary injunction

186. One Agent, LLC (Delaware), entity subject to preliminary injunction

187. ONE FHC, LLC (Texas), entity subject to preliminary injunction

188. One MF Residential, LLC, entity subject to preliminary injunction

189. One MFD4, LLC, entity subject to preliminary injunction

190. One Pass Investments, LLC (Delaware), entity subject to preliminary injunction

191. One RL Trust, entity subject to preliminary injunction

192. One SF Residential, LLC, entity subject to preliminary injunction

193. Orchard Farms Village LLC, receivership entity

194. Palisades-TC, LLC, interested party

195. Patton, Jonathan R., counsel for interested party Palisades-TC, LLC

196. Peckar & Abramson, counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

197. Perry, Deborah M., counsel for interested party The Dixon Water Foundation

198. Pioneer Finance, Inc., interested party

199. Polsinelli PC, counsel for interested party McCormick 101, LLC

200. Ramer, Samuel, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

201. Ramolia, Dhiraj, interested party

202. Reece, David B., counsel for plaintiff-appellee Securities and Exchange Commission

203. Residential MF Assets, LLC (Delaware), entity subject to preliminary injunction

204. Rhino Stainless US, LLC, entity subject to preliminary injunction

205. Ridgeview Addition, LLC (Texas), receivership entity

206. Riverwalk Invesco, LLC (Delaware), entity subject to preliminary injunction

207. Riverwalk Opportunity Management, LLC (Delaware), entity subject to preliminary injunction

208. Riverwalk OZFM, LLC (Delaware), entity subject to preliminary injunction

209. Riverwalk OZFV, LLC (Delaware), entity subject to preliminary injunction

210. Riverwalk QOZBJ, LLC (Delaware), entity subject to preliminary injunction

211. Riverwalk QOZBM, LLC (Delaware), entity subject to preliminary injunction

212. Riverwalk QOZBV, LLC (Delaware), entity subject to preliminary injunction

213. Roossien, Jr., Dennis L., counsel for interested party The Dixon Water Foundation

214. Ross, Smith & Binford, PC, counsel for interested party First Development Company of Ohio

215. Scott, John B., counsel for interested party Pioneer Finance, Inc.

216. Scott & Scott, PLLC, counsel for interested party Pioneer Finance, Inc.

217. Scheff & Stone, L.L.P., counsel for interested party interested party Texas Republic Bank, N.A.

218. Schurr, Patrick J., counsel for interested party interested party Texas Republic Bank, N.A.

219. Seagoville Farms, LLC, receivership entity

220. Securities and Exchange Commission, plaintiff-appellee

221. SF Rock Creek, LLC, receivership entity

222. Shamoun & Norman, LLP, counsel for interested party Southern Properties Capital, Ltd.

223. Shamoun, C. Gregory, counsel for interested party Southern Properties Capital, Ltd.

224. Shavin, Eliot Dana, counsel for interested party Dhiraj Ramolia

225. SK Carnegie, LLC, entity subject to preliminary injunction

226. Somerset-Lost Creek Golf, Ltd., interested party

227. Southern Properties Capital, Ltd., interested party

228. Southern Star Capital, LLC, interested party

229. Spector & Cox, PLLC, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

230. Spector, Howard Marc, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

231. Starr, Hon. Brantley, U.S. District Court Judge (N.D. Tex.)

232. Sosland, Martin A., counsel for interested party Louisiana National Bank

233. STL Park, LLC (Delaware), entity subject to preliminary injunction

234. Tamamoi, LLC, interested party

235. Tarm Carnegie Management, LLC (Delaware), entity subject to preliminary injunction

236. Tarm Carnegie, LLC (Texas), entity subject to preliminary injunction

237. TC Hall, LLC, receivership entity

238. Texas Republic Bank, N.A., interested party

239. The Dixon Water Foundation, interested party

240. The MXBA Trust, entity subject to preliminary injunction

241. The Timothy L. Barton Irrevocable Life Insurance, entity subject to preliminary injunction

242. The Towers Condominium Partners Ltd, entity subject to preliminary injunction

243. Thomas, Cortney C., receiver

244. Tillotson, Jeffrey M., counsel for interested party Palisades-TC, LLC

245. Tillotson Johnson & Patton, counsel for interested party Palisades-TC, LLC

246. Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, receivership entity

247. TLB 2012 IRR Trust, entity subject to preliminary injunction

248. TLB 2018 Trust, entity subject to preliminary injunction

249. TLB 2019 Trust, entity subject to preliminary injunction

250. TLB 2020 Trust, entity subject to preliminary injunction

251. TRTX Properties LLC, entity subject to preliminary injunction

252. Truist Bank, interested party

253. TRWF LODGE, LLC, entity subject to preliminary injunction

254. TRWF, LLC, entity subject to preliminary injunction

255. United States of America, intervenor

256. Venus59 LLC, receivership entity

257. VenusBK195, LLC (Texas), entity subject to preliminary injunction

258. VenusPark201, LLC (Delaware), entity subject to preliminary injunction

259. Vertical Street Ventures, LLC, interested party

260. Villita Development, LLC, receivership entity

261. Villita Towers LLC, receivership entity

262. Wall, Stephen T., defendant

263. Wall007, LLC, defendant and receivership entity

264. Wall009, LLC, defendant and receivership entity

265. Wall010, LLC, defendant and receivership entity

266. Wall011, LLC, defendant and receivership entity

267. Wall012, LLC, defendant and receivership entity

268. Wall016, LLC, defendant and receivership entity

269. Wall017, LLC, defendant and receivership entity

270. Wall018, LLC, defendant and receivership entity

271. Wall019, LLC, defendant and receivership entity

272. Wells, Tim, counsel for receiver Cortney C. Thomas

273. Wielebinski, Joe, counsel for interested party Vertical Street Ventures, LLC

274. Winstead PC, counsel for interested party Vertical Street Ventures, LLC

275. WRL2019, LLC (Texas), receivership entity

The persons and entities described in the fourth sentence of Rule 28.2.1 having an interest in the outcome of this case also include (1) any additional entities that Timothy Barton directly or indirectly controls, (2) investors in defendants and receivership entities Wall007, LLC; Wall009, LLC; Wall010; Wall011, LLC; Wall012, LLC; Wall016; Wall017, LLC; Wall018, LLC; and/or Wall019, LLC, and (3) creditors of receivership entities.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill
*Attorney of Record for Appellee*
*Securities and Exchange Commission*

## STATEMENT REGARDING ORAL ARGUMENT

The Securities and Exchange Commission believes that oral argument is unnecessary for this Court's consideration of this appeal because the issues presented are controlled by settled law and adequately presented in the briefs and the record.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................ xviii

TABLE OF CONTENTS.............................................................................. xix

TABLE OF AUTHORITIES ........................................................................ xxii

COUNTERSTATEMENT OF JURISDICTION .....................................................1

INTRODUCTION ..........................................................................................2

COUNTERSTATEMENT OF THE ISSUES..........................................................3

COUNTERSTATEMENT OF THE CASE..............................................................4

A. This Court vacated and remanded the district court's order appointing a receiver over all Barton-controlled entities......................4

B. On remand, the district court issued orders appointing a receiver over entities that "received or benefitted from" investor funds and preliminarily enjoining other Barton-controlled entities from transferring assets to prevent dissipation and permit further tracing of investor funds..........................................................................6

C. The district court issued orders in supervising the new receivership ...8

STANDARD OF REVIEW ..............................................................................9

SUMMARY OF ARGUMENT .........................................................................10

ARGUMENT .............................................................................................12

I. The district court acted within its discretion in establishing the new receivership.............................................................................12

A. The district court reasonably found a clear necessity to protect investors' interests ....................13

1. Barton asks this Court to narrow the *Netsphere* standard that he advocated for in challenging the first receivership ....................14

2. Barton fails to demonstrate that the district court's finding was clearly erroneous ....................15

B. The district court reasonably found that legal and less drastic equitable remedies would be inadequate ....................18

1. Barton again tries to displace the legal standard he advocated for in challenging the first receivership ....................19

2. Barton fails to demonstrate that the district court's finding was clearly erroneous ....................20

C. The district court reasonably found that the benefits of a receivership outweighed the burdens on the affected parties ....................21

D. The district court set a reasonable scope for the new receivership .....23

1. Barton asks this Court to ignore the "received or benefitted from" standard that he endorsed in challenging the first receivership ....................25

2. The district court acted well within its discretion in determining which entities had "received or benefitted from" investor funds ....................26

3. Barton fails to demonstrate that any of the district court's findings was clearly erroneous ....................29

E. The district court established reasonable terms for the new receivership ....................33

II. The district court acted within its discretion in issuing the preliminary injunction ....................35

A. The district court correctly concluded that the Commission had sufficiently demonstrated that the loan agreements are securities......37

1. The loan agreements are investment contracts under *Howey*...37

2. The loan agreements are notes under *Reves* ............................39

B. Barton's remaining arguments regarding the preliminary injunction are without merit ..............................................................41

III. This Court lacks jurisdiction over Barton's interlocutory appeal from orders the district court issued in the course of supervising the new receivership, which, in any event, were all within the district court's discretion..................................................................................45

A. This Court lacks jurisdiction over Barton's interlocutory appeal from orders the district court issued in the course of supervising the new receivership ......................................................................45

B. Each of the appealed-from orders the district court issued in the course of supervising the new receivership was within the district court's discretion ........................................................................48

IV. Barton provides no justification for the extraordinary remedy of reassigning the case on remand ..................................................51

CONCLUSION ...........................................................................................53

CERTIFICATE OF SERVICE AND FILING

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acheron Cap. Ltd. v. Mukamal*,
22 F.4th 979 (11th Cir. 2022) ....................47

*Askanase v. Livingwell, Inc.*,
981 F.2d 807 (5th Cir. 1993) ....................45

*Associated Recovery L.L.C. v. Does 1-44*,
769 F. App'x 160 (5th Cir. 2019) ....................50

*Belleair Hotel Co. v. Mabry*,
109 F.2d 390 (5th Cir. 1940) ....................46

*Bigby v. Dretke*,
402 F.3d 551 (5th Cir. 2005) ....................44

*Cooper Tire & Rubber Co. v. Farese*,
248 F. App'x 555 (5th Cir. 2007) ....................52

*Fort Bend Cnty. v. United States Army Corps of Engineers*,
59 F.4th 180 (5th Cir. 2023) .................... 51, 52

*In re Baron*,
593 F. App'x 356 (5th Cir. 2014) ....................50

*Kirschner v. JP Morgan Chase Bank, N.A.*,
79 F.4th 290 (2d Cir. 2023) ....................41

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) ....................35

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) .................... 5, 6, 7, 10, 12, 14, 25, 26, 50

*Netsphere, Inc. v. Baron*,
799 F.3d 327 (5th Cir. 2015) .................... 45, 46

*Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*,
31 F.4th 333 (5th Cir. 2022). ....................................................................47

*Perez v. City of San Antonio*,
98 F.4th 586 (5th Cir. 2024) ....................................................................10

*Porter v. Sabin*,
149 U.S. 473 (1893) ....................................................................21

*Pulse Network, L.L.C. v. Visa, Inc.*,
30 F.4th 480 (5th Cir. 2022) ....................................................................52

*Reves v. Ernst & Young*,
494 U.S. 56 (1990) .................................................................... 39, 40, 41

*Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*,
589 U.S. 57 (2020) ....................................................................47

*SEC v. Arcturus Corp.*,
928 F.3d 400 (5th Cir. 2019) ....................................................................37

*SEC v. Barton,*
79 F.4th 573 (5th Cir. 2023) .................................... 5, 7, 9, 12, 23, 25, 34, 43, 49

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) ....................................................................35

*SEC v. Edwards*,
540 U.S. 389 (2004) ....................................................................38

*SEC v. First Financial Group of Texas*,
645 F.2d 429 (5th Cir. 1981) .................................................... 7, 11, 14, 42

*SEC v. Lifepay Group, LLC,*
No. H-18-1098, 2020 WL 1259328 (S.D. Tex. Feb. 26, 2020) ..........................28

*SEC v. Safety Fin. Serv., Inc.*,
674 F.2d 368 (5th Cir. 1982) ....................................................................21

*SEC v. Spence & Green Chem. Co.*,
612 F.2d 896 (5th Cir. 1980) ....................................................................................9

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) ..............................................................................9, 50

*SEC v. Stanford Int'l Bank, Ltd.*,
No. 3:09-cv-298 (N.D. Tex. Jan. 25, 2010)...........................................................15

*SEC v. W.J. Howey Co.*,
328 U.S. 293, 298 (1946)........................................................................... 37, 38

*Starbucks Corp. v. McKinney*,
144 S.Ct. 1570 (2024)..............................................................................................42

*Stoiber v. SEC*,
161 F.3d 745 (D.C. Cir. 1998)................................................................................40

*Tr. Co. of Louisiana v. N.N.P. Inc.*,
104 F.3d 1478 (5th Cir. 1997) ................................................................................40

*United States v. "A" Manufacturing Co., Inc.*,
541 F.2d 504 (5th Cir. 1976) ..................................................................................46

*United States v. Antiques Ltd. P'ship*,
760 F.3d 668 (7th Cir. 2014) ..................................................................................45

*United States v. Davis*,
53 F.4th 833(5th Cir. 2022) ....................................................................................28

*Wark v. Spinuzzi*,
376 F.2d 827 (5th Cir. 1967) ..................................................................................46

**Other Authorities**

Securities Act of 1933 (15 U.S.C. §§ 77a *et seq.*)

Section 2(a)(1), 15 U.S.C. §§ 77b(a)(1)........ 37, 39

Section 17(a), 15 U.S.C. § 77q(a)........5, 36

Section 20(b), 15 U.S.C. § 77t(b)........1

Section 20(d), 15 U.S.C. § 77t(d)........1

Section 22(a), 15 U.S.C. § 77v(a)........1

Securities Exchange Act of 1934 (15 U.S.C. §§ 78a *et seq.*)

Section 3(a)(10), 15 U.S.C. § 78c(a)(10)........ 37, 39

Section 10(b), 15 U.S.C. § 78j(b)........ 4, 36

Section 21(d), 15 U.S.C. § 78u(d)........1

Section 21(e), 15 U.S.C. § 78u(e)........1

Section 27, 15 U.S.C. § 78aa........1

Rule 10b-5, 17 C.F.R. § 240.10b-5........ 4-5, 36

28 U.S.C. § 1292(a)(1)........2, 45

28 U.S.C. § 1292(a)(2)........ 2, 45, 46, 47

28 U.S.C. § 1331........1

## COUNTERSTATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b), 77t(d), 77v(a); Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d), 78u(e), 78aa; and 28 U.S.C. § 1331.

In this consolidated appeal, defendant Timothy Barton timely appeals from eight district court orders (*see* ROA.23-11237.15000-01, ROA.24-10004.15104-05):

- The November 29, 2023 orders appointing a receiver (ROA.23-11237.14768-93, 14794-821);
- The November 29, 2023 order issuing a preliminary injunction (ROA.23-11237.14822-34);
- The November 29, 2023 order ratifying actions the receiver took and orders the court issued during the first receivership (ROA.23-11237.14835-43);
- The November 29, 2023 order appointing appraisers, approving appraisals, and setting hearings for the receiver's proposed sales of the Amerigold Suites, Rock Creek, and Frisco Gate properties held by receivership entities (ROA.23-11237.14844-46);
- The December 15, 2023 order approving the sale of Amerigold Suites (ROA.24-10004.15098-99);
- The December 15, 2023 order approving the sale of Rock Creek (ROA.24-10004.15100-01); and

- The December 15, 2023 order approving the sale of Frisco Gate (ROA.24-10004.15102-03).

This Court has jurisdiction over Barton's appeal from the receivership orders pursuant to 28 U.S.C. § 1292(a)(2) and from the preliminary injunction order pursuant to 28 U.S.C. § 1292(a)(1). But this Court lacks jurisdiction over Barton's appeal from orders that the district court issued in the course of supervising the receivership. *See infra* 45-47.

## INTRODUCTION

This appeal represents this Court's second opportunity to review the district court's imposition of a receivership to protect assets from waste and dissipation for the benefit of investors in Barton's alleged securities fraud. On remand following this Court's decision vacating a receivership that included all Barton-controlled entities, the district court held an evidentiary hearing to determine whether to establish, and the scope and terms of, a new receivership and whether other injunctive relief was necessary to protect investors.

Faithfully and thoughtfully applying this Court's mandate, the district court determined that "a receivership is justified here because there is a clear necessity to protect defrauded investors' interests, legal and less drastic remedies are inadequate, and the benefits of the receivership outweigh the burdens to affected parties." ROA.23-11237.14791. And further applying this Court's mandate, the district court included in the new receivership entities that received or benefited

from investor funds, and issued a preliminary injunction freezing the assets of Barton-controlled entities for which the Commission was as of yet unable to trace investor funds due to "Barton's commingling of funds, transferring of properties, and interference with tracing efforts." ROA.23-11237.14825 (cleaned up).

Unsatisfied with the district court's reasoned application of the very standards that he endorsed in challenging the first receivership, Barton asks this Court to not only vacate the receivership and the asset freeze but also to take the extraordinary step of replacing the district court judge on remand. Because the district court acted well within its discretion in imposing equitable relief to protect investors' interests in what remains of Barton's fraudulent enterprise, this Court should affirm the receivership and preliminary injunction orders, dismiss Barton's interlocutory appeal from receivership supervisory orders that are not properly before this Court, and reject Barton's baseless attempt to replace Judge Starr.

## COUNTERSTATEMENT OF THE ISSUES

1. Whether the district court acted within its discretion in appointing a receiver and establishing a receivership of reasonable scope and terms.

2. Whether the district court acted within its discretion in issuing a preliminary injunction freezing the assets of Barton-controlled entities not placed in the receivership to prevent dissipation and permit further tracing of investor funds.

3. Whether this Court lacks jurisdiction over Barton's interlocutory appeal from orders the district court issued in the course of supervising the receivership.

4. Whether this Court should reject Barton's request to reassign this case on remand when Barton provides no justification for such extraordinary relief.

## COUNTERSTATEMENT OF THE CASE

### A. This Court vacated and remanded the district court's order appointing a receiver over all Barton-controlled entities.

On September 23, 2022, the Commission filed a complaint against Barton and others, alleging that from 2017 to 2019 they defrauded more than 100 investors out of more than $26 million. ROA.23-11237.62-90. Barton told investors that their funds would be pooled with those of other investors and Barton-controlled entities and then used to purchase specified parcels of land that would be developed into residential lots. Barton promised investors that they would receive interest payments and that their principal would be repaid. But after investors invested their money via loan agreements with Barton-controlled entities, Barton did not purchase the properties or make the promised payments. Instead, Barton misappropriated nearly all of the invested funds and used them to pay for, among other things, his lifestyle and other real estate projects in which entities under his control held interests. The complaint alleges that Barton violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder,

17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act, 17 U.S.C. § 77q(a), and seeks, among other things, an order enjoining Barton from further violating those provisions and requiring him to disgorge his ill-gotten gains. ROA.23-11237.84, 85-86, 88-89.

On October 18, 2022, the district court granted the Commission's motion to appoint a receiver over all Barton-controlled entities to marshal and preserve their assets. ROA.23-11237.642-66.

On appeal, this Court "vacate[d] the appointment of the receiver and remand[ed] so that the district court [could] consider whether to appoint a new receivership under the … factors" set forth in *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012). *SEC v. Barton,* 79 F.4th 573, 579 (5th Cir. 2023). This Court also held that, because "a receivership's jurisdiction extends only over property subject to the underlying claims, the district court abused its discretion by including all Barton-controlled entities in the receivership without first finding that they had received or benefited from the ill-gotten funds." *Id.* at 580. It thus instructed that "[s]hould the district court decide that a new receivership is justified on remand, it can only extend over entities that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation." *Id.* at 580-81. And it explained that the district court could impose "an

injunction freezing asset transfers while [the Commission] trace[s] the funds and determine[s] which entities should be placed in the [new] receivership." *Id.* at 580.

### B. On remand, the district court issued orders appointing a receiver over entities that "received or benefitted" from investor funds and preliminarily enjoining other Barton-controlled entities from transferring assets to prevent dissipation and permit further tracing of investor funds.

On remand, the Commission moved the district court for a receivership over specified entities that had received or benefited from investor funds and a preliminary injunction freezing the assets of Barton-controlled entities not placed in the receivership to prevent dissipation and permit further tracing of investor funds. ROA.23-11237.10414-45. On November 29, 2023, after full briefing and an evidentiary hearing at which both the Commission and Barton called witnesses, the court established a new receivership, set its scope and terms, and issued a preliminary injunction freezing the assets of Barton-controlled entities not placed in the receivership. ROA.23-11237.14768-93, 14794-821, 14822-34.

*First*, the district court, applying *Netsphere*, determined that "a [new] receivership is justified here because there is a clear necessity to protect defrauded investors' interests, legal and less drastic remedies are inadequate, and the benefits of the receivership outweigh the burdens to affected parties." ROA.23-11237.14791.

*Second*, the district court, applying *Barton*, found that 54 of the 82 Barton-controlled entities proposed by the Commission had "received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation." ROA.23-11237.14778 (cleaned up). The court explained, however, that, "mindful of the *Netsphere* analysis, which includes discussion of whether a less restrictive tool will preserve assets," there was no "legally sufficient justification to extend the receivership" over entities as to which "an asset freeze will offer the needed protection." ROA.23-11237.14791.

*Third*, the district court issued a preliminary injunction freezing the assets of Barton-controlled entities that were not placed in the new receivership. ROA.23-11237.14822-34. The court concluded that the preliminary injunction was warranted under *SEC v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir. 1981), which held that "the test laid down for injunctive relief is whether or not a proper showing has been made by the SEC that there is a reasonable likelihood that the defendant is engaged or about to engage in practices that violate the federal securities laws." *Id.* at 434 (cleaned up). The court also found the preliminary injunction warranted under the traditional four-factor injunction test, finding that "the SEC has established that there is a substantial likelihood of success on the merits that Barton violated the federal securities laws, there will be irreparable harm without the preliminary injunction, the balance of equities favors

an injunction, and it is in the public interest to issue a preliminary injunction." ROA.23-11237.14823. As the court found, "because of Barton's commingling of funds, transferring of properties, and interference with tracing efforts, the SEC and the [r]eceiver haven't been able to trace all entities that have received or benefited from [investor funds]." ROA.23-11237.14825 (cleaned up). An asset freeze was thus "a good idea" because it "would enable the … investigat[ing] and trac[ing of] assets to … entities that are subject to the freeze" and would "protect[] th[e court's] ability to provide a recovery for the defrauded investors." ROA.23-11237.14825. "Given Barton's prior conduct," the court found, "without an injunction, it's likely that Barton would further dissipate or conceal assets, limiting recovery for the defrauded investors." ROA.23-11237.14825.

### C. The district court issued orders in supervising the new receivership.

Also on November 29, 2023, the district court issued an order that, among other things, ratified the receiver's possession of materials obtained during the first receivership and ratified and adopted *nunc pro tunc* orders approving settlement agreements that the receiver had entered into during the first receivership. ROA.23-11237.14835-43. The court also issued an order appointing appraisers, approving appraisals, and setting hearings for the receiver's proposed sales of three properties held by receivership entities, referred to as Amerigold Suites, Rock Creek, and Frisco Gate. ROA.23-11237.14844-46. And, following those hearings,

the district court issued orders approving those sales, finding that each satisfied all statutory requirements and was in the receivership's best interest. ROA.24-10004.15098-99, 15100-01, 15102-03.[1]

## STANDARD OF REVIEW

"[T]he decision to appoint [a receiver is] an equitable determination resting in the sound discretion of the district court and reviewable only for an abuse of that discretion." *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980); *accord Barton*, 79 F.4th at 577. "A district court's … actions in supervising an equity receivership [are also] reviewed for abuse of discretion." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019). And the issuance of a preliminary injunction is reviewed "for abuse of discretion" with "findings of fact"

[1] The district court had previously issued orders approving the receiver's sales of those properties (ROA.24-10004.2783-85, 3298-99, 5682-83) but the sales—which the receiver sought to provide funds to maintain other receivership assets—did not close due to Barton's interference and appeals (*see, e.g.*, ROA.24-10004.13917-18, 13994, 14135-36; *see also* Dkt. 530). Barton's appeals from the Rock Creek and Amerigold Suites sale approval orders issued during the first receivership were initially dismissed for lack of jurisdiction. App. Dkt. 74 (No. 22-11226); App. Dkt. 48 (No. 23-10515). But after suspending the receiver's power to complete the sales, this Court withdrew those dismissal orders and dismissed the appeals as moot. App. Dkt. 90 (No. 22-11126); App. Dkt. 71 (No. 23-10515). Barton did not appeal from the Frisco Gate sale approval order issued during the first receivership.

reviewed for "clear error" and "conclusions of law" reviewed "*de novo*." *Perez v. City of San Antonio*, 98 F.4th 586, 594 (5th Cir. 2024).

## SUMMARY OF ARGUMENT

1. The district court acted within its discretion in appointing a receiver and establishing the receivership's scope and terms. Following the *Barton* mandate, and after an evidentiary hearing, the district court determined that a new receivership was justified. The court applied the *Netsphere* factors and found a clear necessity to protect the defrauded investors' interests, that legal and less drastic equitable remedies would be inadequate, and that a receivership's benefits outweighed its burdens on affected parties. Barton's arguments to the contrary ignore the court's careful application of *Netsphere* to the evidence before it and fail to show that the court abused its discretion in establishing a receivership.

The district court likewise acted well within its discretion in including 54 of the 82 entities proposed by the Commission in the new receivership, each of which had received or benefited from investor funds. The district court reasonably determined what entities should be included by faithfully applying the standard this Court established in *Barton* to the evidence before it. That Barton wishes the court had applied a different standard or adopted his view of certain evidence does not demonstrate an abuse of discretion.

As for the receivership terms, the district court acted reasonably when it did not structure the receivership such that Barton could use receivership property to pay his attorneys. And the court reasonably authorized the receiver to sell receivership property—with court approval—to generate funds to preserve other receivership assets. Finally, the court authorized the receiver to spend receivership funds not, as Barton claims, to advance the Commission's case but rather to marshal and preserve receivership assets.

2. The district court acted within its discretion in issuing a preliminary injunction freezing the assets of Barton-controlled entities not placed in the new receivership. The court reasonably found that the freeze was warranted under both this Court's *First Financial* standard and the traditional preliminary injunction standard to prevent asset dissipation and permit further tracing of investor funds. In so doing, the district court correctly determined that the Commission had sufficiently demonstrated that the loan agreements investors entered into with Barton-controlled entities are securities under the federal securities laws.

3. This Court lacks jurisdiction over Barton's interlocutory appeal from orders that the district court issued in the course of supervising the new receivership. But even were this Court to conclude that it has jurisdiction, each of those orders was within the district court's discretion.

4. There is no basis to reassign the case to a different district court judge on remand. Judge Starr continues to ably oversee the case, without bias and with due regard for this Court's decisions. That Barton disagrees with certain of the district court's decisions is no justification for the extraordinary step of reassignment.

## ARGUMENT

### I. The district court acted within its discretion in establishing the new receivership.

As this Court held in vacating the first receivership, when the Commission moves for a receivership without first obtaining a preliminary injunction, "the *Netsphere* factors must be met for a receivership to be justified: 1) a clear necessity to protect the defrauded investors' interest in property, 2) legal and less drastic equitable remedies are inadequate, and 3) the benefits of receivership outweigh the burdens on the affected parties." *Barton*, 79 F.4th at 578-79, citing *Netsphere*, 703 F.3d at 305. On remand, the district court carefully applied those factors and found that a receivership was justified to marshal and preserve receivership assets. Barton suggests (Br. 54) that the district court imposed the new receivership because "things would be better or easier if a party of the [c]ourt's choosing were given control" of the assets at issue. But that is neither the standard the court applied nor the substance of its findings. *See* ROA.23-11237.14773-78.

### A. The district court reasonably found a clear necessity to protect investors' interests.

Based on the evidence before it, which included scores of documents and testimony from a three-and-a-half hour evidentiary hearing, the district court found a clear necessity "to protect the defrauded investors' interests." ROA.23-11237.14773-75. That was so because "many of the assets and entities" that had received or benefited from investor funds were "mired in liens, lawsuits, and foreclosures that threaten[ed] to diminish the value of the assets." ROA.23-11237.14773 (cleaned up). As the court emphasized, "[a]pproximately thirty-five lawsuits were stayed through the [first receivership's] litigation stay" and "but for the [first receivership's] stay of foreclosures" and the receiver's "extensive efforts to mollify secured creditors' concerns[,] foreclosures would have eliminated millions of dollars in property value" from the receivership estate. ROA.23-11237.14773-74 (cleaned up).

Moreover, the district court found a "clear necessity" to protect investors' interests against the "real risk that Barton would conceal or dissipate assets if left in control." ROA.23-11237.14774. As the court pointed out, Barton had used investor funds to, for example, "purchase a plane," "make payments on his personal credit card," and pay for "meals, car payments, educational expenses, airplane repair expenses, payments to [his] ex-wife and children, and mortgage payments on the residence [he] lived in." ROA.23-11237.14774 (cleaned up).

Barton even spent investor funds "*after* the SEC filed its complaint." ROA.23-11237.14774. Barton fails to demonstrate that the district court exceeded the bounds of its discretion in coming to this conclusion.

#### 1. Barton asks this Court to narrow the *Netsphere* standard that he advocated for in challenging the first receivership.

Unsatisfied with the *Netsphere* standard that he successfully urged this Court to adopt, Barton now asks this Court (Br. 54-58) to now read *Netsphere* as requiring the additional showing of "a significant and imminent risk of asset flight that cannot be controlled by other means," such as "where liquid assets are at high risk of being transferred outside the court's jurisdiction."

That requirement finds no grounding in *Netsphere*, in which this Court explained that a receivership may be justified "to prevent the threatened diversion of assets through fraud or mismanagement." 703 F.3d at 306 ("[I]n cases of non-compliance with SEC regulations, a receiver may be appointed to prevent the corporation from dissipating corporate assets and to pay defrauded investors."). Indeed, as this Court has long recognized, a receivership "is particularly necessary" when investors are defrauded because "in such cases, it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme." *First Fin. Grp.*, 645 F.2d at 438. And

those are the precise risks that the district court pointed to in finding a clear necessity here.

Barton nonetheless claims (Br. 54) that his proffered understanding of "clear necessity" is "represent[ed]" by the receivership imposed in the Stanford securities fraud litigation, but the receivership estate therein, as here, included real property. *See, e.g.*, Order Approving Procedures for Sales of Real Property by the Receiver, Dkt. 979, *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-298 (N.D. Tex. Jan. 25, 2010). And while Barton argues that "here, the main assets were, by nature, stationary and planted in the ground" (Br. 55), he does not explain why the risks of third-party litigation and foreclosure cannot create the same "clear necessity" as the risk of liquid asset flight. As the district court's findings amply demonstrate (*see supra* 13-14), they sure can. Indeed, Barton concedes—as he must (Br. 55)—that the district court "held that there was … asset flight" based on his "spending" of investor funds, some of which occurred *after* the Commission filed this civil enforcement action.

**2. Barton fails to demonstrate that the district court's finding was clearly erroneous.**

Barton argues (Br. 55-58) that the district court erred in finding that his spending of investor funds posed a "real risk that [he] would conceal or dissipate assets if left in control" (ROA.23-11237.14774) because he mostly (but not exclusively) spent investor funds *before* the Commission filed this action. Even

putting aside evidence that Barton continued to spend investor funds "*after* the SEC filed its complaint" (ROA.23-11237.14774), Barton does not explain why the court was required to turn a blind eye to conduct predating this action, particularly when shortly after this action was filed his ability to spend investor funds was curtailed by the appointment of a receiver. Barton also incorrectly suggests that he spent investor funds post-filing solely to compensate his lawyers (Br. 57), when the evidence shows that he also "mov[ed] funds to other entities" under his control. ROA.23-11237.14774; *see* ROA.23-11237.10318. And to the extent that the district court considered Barton's use of investor funds to pay for his own lawyers, it was not to "improper[ly] … prevent the expenditure of resources on rebutting the Government's allegations" (Br. 57), but because Barton's actions demonstrated that leaving him to his own devices posed an impermissible risk of dissipation.

Barton's remaining attacks on the district court's finding are equally flawed. He claims (Br. 56) that his spending of investor funds—which included, for example, "not less than $5.6 million in … payments for credit card bills" (ROA.23-11237.10319)—was "not of a financial magnitude to make it significant historical asset flight." The district court could be forgiven for concluding otherwise. And there's more. Barton asserts (Br. 57) that the investor funds he spent on an airplane were "nearly immediately refunded when the plane was quickly financed." Barton ignores not only that such spending nonetheless

demonstrates a risk of dissipation but that, as the court found, he also used investor funds to pay for "airplane repair expenses." ROA.23-11237.10319-20. And Barton's insistence (Br. 57-58) that the receivership assets are primarily real property while he only spent money is likewise beside the point. That Barton spent investor funds (sometimes after selling real estate (ROA.23-11237.10318)) supports the district court's finding that Barton poses a "real risk" of concealing or dissipating assets if unrestrained—including by the further disposition or encumbrance of real property.

Finally, Barton complains that the district court did not consider whether the financial condition of the entities he controlled was "abnormal" for the real estate development business (Br. 59-60), but does not dispute that liens, lawsuits, and foreclosures threatened those entities, such that staying third-party litigation and foreclosures was necessary to preserve asset value. *See, e.g.*, ROA.23-11237.10332. Thus, the court imposed a receivership not because it thought that "someone other than … Barton would do a better job of managing [the] companies" (Br. 59), but because it found that a receivership was necessary "to stay third-party litigation and foreclosures, allowing for the assets to retain as much value as possible," and to "prevent[] further dissipation of assets" given "the real risk that Barton would conceal or dissipate assets if left in control." ROA.23-11237.14773-75.

### B. The district court reasonably found that legal and less drastic equitable remedies would be inadequate.

Barton fares no better in attacking the district court's finding that legal and less drastic equitable remedies would be inadequate to protect from the risks of asset waste and dissipation. ROA.23-11237.14775-76. The court rejected Barton's proposal to instead establish a monitorship with the monitor's approval required for "'a class of the subject corporation's major business decisions, including asset transfers.'" ROA.23-11237.14775, quoting ROA.23-11237.14458. Under a monitorship, the court explained, "Barton [would be] put back in charge," and "[i]t would be up to Barton what a 'major business decision' is and then hopefully the monitor would be looped in." ROA.23-11237.14775. The court found that "[s]uch a gamble of a remedy is insufficient to protect investors' interests" given that the court had "already found Barton in contempt for his violation of disclosure obligations under the prior [r]eceivership [o]rder" and that having Barton "in the primary management position" risked his continued "mismanagement and misuse of [investor funds]." ROA.23-11237.14775. A monitorship was also a "bad idea" because "a monitor couldn't stay litigation or foreclosures or even investigate or trace assets." ROA.23-11237.14775.[2]

[2] For the same reasons, Barton's assertion (Br. 26) that the district court could have secured assets "by identifying and demanding the funds that should be

The district court also rejected as "inadequate" Barton's proposal to impose "an asset freeze alone." ROA.23-11237.14775-76. While "[a] receiver has the power to sell properties and assets," the court reasoned, "without a receivership, assets are abandoned, subject to liens with increasing accrued interest and property taxes," and with "insufficient cash to pay the ongoing expenses" of maintaining the properties, "a number of [which] require active management, including an operating hotel, apartment complexes, and properties in development." ROA.23-11237.14775-76. As the court observed, "[e]very piece of real property but one in the initial receivership is encumbered by debt" and "[e]very month, an additional $165,000 in interest (at standard, non-default rates) accrues collectively on th[o]se loans, further eroding the value of the assets." ROA.23-11237.14776.

#### 1. Barton again tries to displace the legal standard he advocated for in challenging the first receivership.

Barton again quibbles with the *Netsphere* standard, arguing that the district court should have applied something "closely akin to the strict scrutiny standard applied against restrictions of fundamental constitutional rights." Br. 61; *see also* Br. 26. But Barton does not identify support for this argument in *Netsphere* or elsewhere.

returned, by filing a lien for that amount, or through a claim if proven and necessary" is unavailing.

### 2. Barton fails to demonstrate that the district court's finding was clearly erroneous.

Barton argues (Br. 61-62) that the district court's concern that a monitorship was "a gamble of a remedy" since whether "the monitor would be looped in" "would be up to Barton" (ROA.23-11237.14775) was misplaced because a court order could require it. But the court reasonably concluded that a court order would not suffice given that it had "already found Barton in contempt for his violation of disclosure obligations under the prior [r]eceivership [o]rder," in addition to his "mismanagement and misuse" of investor funds. ROA.23-11237.14775. Barton also argues (Br. 62) that the court failed to consider "the advantages of real estate development professionals … being in place," but the court rejected a monitorship based on its inherent limitations, not based on who might serve as monitor.

Finally, Barton takes issue (Br. 62-63) with the district court's statement that "a monitor couldn't stay litigation or foreclosures or even investigate or trace assets." ROA.23-11237.14775. But the court was addressing Barton's proposal for a standalone monitorship (*see* ROA.23-11237.14458), as to which the court's statement is spot on. Moreover, even a monitorship "accompanied … with a targeted litigation stay" (Br. 62) would not, as Barton concedes (Br. 63), permit the required investigation and tracing of assets, much less permit the resolution of third-party claims or the recovery of fraudulent transfers made by receivership entities to third parties (*see* ROA.23-11237.10326).

### C. The district court reasonably found that the benefits of a receivership outweighed the burdens on the affected parties.

Barton fails to demonstrate that the district court clearly erred in finding that "any burden Barton claims to be imposed by a receivership is outweighed by" the "significant" benefits of a receivership, including the stay of third-party litigation and foreclosure and the placement of "an independent, proficient person in charge" who "would be able to maximize, marshal, and preserve the assets in the receivership." ROA.23-11237.14775-76. "[P]rotect[ing] the interests of defrauded investors" thus outweighed Barton's unsupported claim that the receivership would impede potential real estate development projects. ROA.23-11237.14777.

Barton nonetheless complains (Br. 63-64) that the receiver "is not capable of doing what needs to be done." Barton's unsupported assertions are without merit, and the district court did not abuse its "broad powers" of receivership supervision, *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982), by selecting the receiver to serve as the court's "officer," *Porter v. Sabin*, 149 U.S. 473, 479 (1893). The receiver, who has retained other professionals as appropriate, has significant experience both as a receiver and with commercial disputes, which is a qualification, not a disqualification, given that recovering value for the receivership estate has required, and will continue to require, litigation. *See, e.g.*, ROA.23-11237.10235.

Attempting to bolster his argument, Barton claims (Br. 63-64) that the receiver has "little grasp" about the potential development of certain property in Venus, Texas, but the evidence to which Barton points demonstrates that the receiver is "consulting with" "development professionals" about that property and that "[t]hey have not found a way to move the development forward at this time." ROA.23-11237.15319:21-20:5; *see also* ROA.23-11237.10276-80 (the receiver detailing the potential development of that property). Barton also complains (Br. 64) that in estimating what recovery might result from the sale of properties, the receiver indicated that the estimated recovery was "[u]nknown" for certain properties. *See* ROA.23-11237.10315-16. But as the receiver explained, he included "[u]known" because he "[didn't] know if it will result in anything *to the receivership*[.]" ROA.23-11237.15316 (emphasis added). Barton fails to explain why that approach calls the receiver's abilities into question.

Barton also incorrectly accuses (Br. 64-65) the district court of ignoring the receivership's burden on him. The court considered Barton's claimed burdens, including his loss of control of the entity owning a house (which Barton himself was seeking to sell) and the impact of the receivership on his ability to use entity funds to pay his personal attorneys. *See* ROA.23-11237.11583. The court was "mindful" of "the cost of violently wresting property rights from the companies' owners before discovery much less a trial proving wrongdoing and liability," but

reasonably exercised its discretion to conclude that, on balance, "any burden Barton claims to be imposed by a receivership is outweighed by the benefits of a receivership." ROA.23-11237.14777 (cleaned up).

**D. The district court set a reasonable scope for the new receivership.**

Barton likewise fails to demonstrate that the district court abused its discretion in determining the scope of the receivership. In vacating the first receivership, this Court explained that "the district court [had] abused its discretion by including all Barton-controlled entities in the receivership without first finding that they had received or benefited from the ill-gotten funds" and instructed that "[s]hould the district court decide that a new receivership is justified on remand, it can only extend over entities that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation." *Barton*, 79 F.4th at 580-81. Applying that standard, the district court included 54 (of 82 proposed) entities in the new receivership because, the court found, each had received or benefited from investor funds, and appointing a receiver to steward the entity would best protect its value. ROA.23-11237.14778-91.

Barton conceded that some of the included entities met this Court's standard. ROA.23-11237.14778-80. Of the remaining included entities, the district court found that they:

- hold properties that were purchased with or benefited from investor funds;

- used investor funds to purchase properties that were then sold and continue to hold contractual or legal rights related to those properties and sale proceeds;
- received investor funds directly or indirectly, including from other receivership entities, from sales of properties that were purchased with or benefited from investor funds, or from loans obtained using investor funds; and/or
- hold participation interests in development projects that received investor funds.

ROA.23-11237.14780-90.

The court further explained that it excluded proposed entities from the receivership that only tangentially benefited from investor funds because placing them in receivership was unwarranted. ROA.23-11237.14790-91. These entities either owned entities that received investor funds or were trusts that held the ultimate beneficial interest in entities that held property “connected to” investor funds. ROA.23-11237.14790-91. The court refused to “extend the receivership this far” because it could instead impose an asset freeze over those entities, which “is a less restrictive tool that still preserves these particular assets.” ROA.23-11237.14791.

### 1. Barton asks this Court to ignore the "received or benefitted from" standard that he endorsed in challenging the first receivership.

Although Barton endorsed the "received or benefitted from" standard in challenging the first receivership[3] and did not dispute its application in challenging the new receivership before the district court, he now argues (Br. 21-24) that in *Barton* "this Court was not addressing what connection to [investor] funds would suffice for placing assets in the receivership." But this Court clearly was: "Should the district court decide that a new receivership is justified on remand," this Court held, "it can only extend over entities that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation." *Barton*, 79 F.4th at 580-81.

And contrary to Barton's assertion (Br. 24, 25, 26), *Netsphere* does not undermine the "received or benefitted from" standard. In *Netsphere*, which this Court cited in *Barton*, this Court concluded that "the jurisdictional principle that a court's equitable powers do not extend to property unrelated to the underlying litigation applies with equal force to receivership," and thus "[a] court lacks jurisdiction to impose a receivership over property that is not the subject of an

---

[3] *See, e.g., Barton*, 79 F.4th at 580 ("Barton … argues that the district court erred by placing multiple entities he controls in the receivership without any showing that they received or benefitted from ill-gotten investor funds.").

underlying claim or controversy." 703 F.3d at 310. In reaching entities that received or benefited from investor funds, the new receivership abides by that limitation. The new receivership extends only to property proven to be related to the underlying litigation.

Ignoring the district court's thoughtful approach, Barton claims (Br. 40-42) that the court rotely included in the receivership any entity that received or benefited from investor funds. Not so. As the court pointed out, it was "mindful of the *Netsphere* analysis, which includes discussion of whether a less restrictive tool will preserve assets," and thus refused to "extend the receivership" to include those entitles that had benefited from investor funds but could be adequately preserved through an asset freeze. ROA.23-11237.14790-91. In other words, the court extended the receivership over only those entities for which "absent a receiver to manage, maximize, and protect the value of the … [e]ntities' assets, the investors' interest in these properties [was] at substantial risk." ROA.23-11237.14795.

**2. The district court acted well within its discretion in determining which entities had "received or benefitted from" investor funds.**

To prove that entities received or benefited from investor funds, the Commission relied on actual tracing—specific examples from financial records of investor funds or benefits from investor funds flowing to those entities. *See*

ROA.23-11237.206-23, 10235-333, 10478-89; *see also* ROA.23-11237.15285:16-86:5, 15380:5-20. Those examples included instances in which (1) the only funds in the transferor account were investor funds or proceeds from loans secured with property purchased with investor funds, (2) there were insufficient funds in the transferor account to make the transfer without investor funds or proceeds from loans secured with property purchased with investor funds, or (3) the transfer out of the transferor account was in a matching amount to a deposit into the transferor account of investor funds or proceeds from loans secured with property purchased with investor funds. *See* ROA.23-11237.15288:25-91:2, 15359:11-20, 15380:5-20*; see, e.g.*, ROA.23-11237.15381:2-82:8.[4]

Barton faults the district court (Br. 28-29, 35-37) for not requiring expert testimony regarding the tracing of investor funds. But the testimony and other evidence the Commission introduced simply followed the flow of funds documented in financial records and then used basic math to calculate and summarize the results. As the Commission's accountant testified, the method was to "take the bank records, identify investor deposits and then trace those investor

[4] Those examples were not a complete list of instances in which entities received or benefited from investor funds because a complete forensic accounting was neither necessary nor practical for purposes of determining the scope of the receivership. *See, e.g.*, ROA.23-11237.15285:25-86:5, 15291:3-6, 15295:24-96:3, 15360:5-8, 15382:9-16.

funds through the bank accounts to see how they were used." ROA.23-11237.15380:8-11. That does not require expert testimony. *United States v. Davis*, 53 F.4th 833, 848-49 (5th Cir. 2022) (holding that the district court did not err in admitting the testimony of a forensic auditor who traced the flow of funds from bank records and concluding that such testimony was not expert testimony).[5] Indeed, Barton's expert testified that specialized tracing methodology is not required for such actual tracing. ROA.23-11237.15436:11-37:9. And Barton's expert did not perform his own tracing analysis or otherwise opine that even a single entity placed in the receivership had not received or benefited from investor funds. ROA.23-11237.15439:14-40:3.

Barton similarly argues (Br. 32-35) that the district court erred by not "[d]emanding" that the Commission use the accounting records of certain Barton-related entities in its tracing analysis. But Barton's expert conceded that those records could not actually establish the flow of funds among Barton-controlled entities. ROA.23-11237.15447:5-10. And the receiver testified that he

---

[5] *See also SEC v. Lifepay Group, LLC,* No. H-18-1098, 2020 WL 1259328, *5-6 (S.D. Tex. Feb. 26, 2020), report and recommendation adopted, 2020 WL 1308202 (S.D. Tex. Mar. 16, 2020) (denying motion to strike declaration of Commission accountant who was not acting as an expert in "trac[ing] the flow of funds through various entities and create[ing] a summary chart of her finding," which required "totaling the deposits and withdrawals related to various entities and people involved in the underlying transactions").

"question[ed] the validity" of the accounting records prepared when the entities were under Barton's control and that a "full analysis" of the records was both prohibitively expensive and unnecessary to determine which entities had received or benefited from investor funds. ROA.23-11237.15330:15-31:10; *see also* ROA.23-11237.10250-51 (the receiver describing such records as "incomplete").

Finally, Barton argues (Br. 38-40) that the district court erred in permitting the Commission to rely on testimony and documentary evidence from the receiver, contending that it was not the receiver's job and that the receiver effectively "[sat] on both sides of the bench." It *was* the receiver's job to trace investor funds under the first receivership order (*see, e.g.*, ROA.23-11237.645), and Barton identifies no good reason why the court should disregard such evidence in determining the scope of the new receivership.

### 3. Barton fails to demonstrate that any of the district court's findings was clearly erroneous.

In challenging the district court's specific line-drawing determinations (Br. 25-32), Barton misapprehends the court's approach and fails to demonstrate that the court clearly erred in concluding that any entity received or benefited from investor funds.

*First*, Barton argues (Br. 25-27) that the district court erred in placing entities in the receivership that had received "a small amount" of investor funds. But Barton does not dispute that such entities received or benefited from investor

funds (or propose a bright-line rule the court should have applied). And his suggestion that the court should have pursued a less drastic remedy for such entities overlooks that the entities placed in the receivership required protection from liens, lawsuits, and foreclosures regardless of the amount of investor funds received. In addition, many of the entities placed in the receivership are single-asset entities, and while Barton argues (Br. 25) that a receivership should "seize the assets of an entity only to the extent it possesses the property in question," he does not explain how an entity could be placed in receivership for only a portion of its asset or how such an approach could satisfy this Court's directive from *Barton*.

Moreover, Barton's specific examples fail to demonstrate that the district court clearly erred in concluding that any entity received or benefited from investor funds. He points (Br. 26) to D4DS, LLC, D4FR, LLC, D4IN, LLC (Texas), and D4OP, LLC, but the court reasonably found that these entities benefited from investor funds in several ways. ROA.23-11237.14781-86. For example, they procured large HUD loans by relying on assets that were purchased with or benefited from investor funds. ROA.23-11237.14782-83. While Barton disagrees (Br. 43-45), the evidence was that such assets "were … essential in obtaining each of the sizable HUD loans." ROA.23-11237.10264-67; *see also* ROA.23-11237.15293:11-95:6. Moreover, these entities also benefited from investor funds being used to pay for offices and labor. ROA.23-11237.14784. Again, Barton

disagrees that there was a benefit (Br. 45), but the evidence was that without investor funds paying those costs, "th[o]se employees would not have been doing [that] work" and "the HUD developments would not have occurred." ROA.22-11237.15336.

Barton also points (Br. 27) to Goldmark Hospitality, LLC, but the district court reasonably found that it had benefited from investor funds in light of evidence that it had received $200,000 in investor funds in addition to investor funds being used to pay for improvements, operations, and employees for its hotel. ROA.23-11237.14781; *see also* ROA.23-11237.10272-73, 10484. Finally, Barton points (Br. 27) to 2999TC Acquisitions, LLC, but the district court reasonably found that it had benefited from investor funds because it had previously owned an office building that was purchased with investor funds (at least in part). ROA.23-11237.14787; *see also* ROA.23-11237.10282-83 (identifying other instances of 2999TC Acquisitions, LLC benefiting from investor funds).

*Second*, Barton argues (Br. 27-30) that the district court improperly held that "[o]nce a company had received some [investor funds] … everything that company spent thereafter was considered [investor] funds." But, as discussed above, the Commission's evidence was actual tracing—specific examples from financial records of investor funds or benefits from investor funds flowing to those entities. *See supra* 26-27. Thus, the court did not, for example, "treat[] every dollar leaving

JMJ Development as tainted." Br. 29-30. As the Commission's witnesses explained, because actual tracing was used, the presence of non-investor funds at JMJ Development did not impact their ability to trace investor funds. *See, e.g.*, ROA.23-11237.15297:23-98:3, 15332:17-33:14, 15361:2-12, 15367:17-68:7, 15384:7-18.

The same is true of FHC Acquisitions LLC (Br. 46-47), which the district court reasonably found benefited from investor funds because investor funds were used in connection with its purchase of Frisco Gate. ROA.23-11237.14780. Evidence before the district court demonstrated that such payments could not have been made without the use of investor funds. ROA.23-11237.10260, 10354, 10484. And while Barton argues (Br. 49-50) that the district court erred in concluding that SF Rock Creek, LLC had benefited from investor funds because investor funds were used for its purchase of Rock Creek (ROA.23-11237.14781), the evidence was that that the entity had "received commingled funds from entities that received … loans obtained by relying on properties purchased with … [i]nvestor [f]unds, and at least one entity … that received … [i]nvestor [f]unds and used these funds to purchase the Rock Creek [p]roperty," and that "proceeds from the sale of [a property] purchased using … [i]nvestor [f]unds[] were used to repay a loan on the Rock Creek [p]roperty." ROA.23-11237.10256-57, 10345-52.

*Third*, Barton argues (Br. 30-32) that the district court erred in including entities that had received investor funds but then transferred them. As the court explained, the transfer did not mean that the entity had not benefited from the funds (and Barton does not show otherwise); the court's "job [was] to determine whether entities received or benefited from [investor funds], and that occurred here—even if the funds were later transferred out." ROA.23-11237.14784 (cleaned up). And in any event, the court found that the entities Barton points to had benefited from investor funds in more ways than only holding investor funds for a matter of weeks. *See* ROA.23-11237.14781-86 (addressing benefits received by D4DS, LLC, D4FR, LLC, D4IN, LLC (Texas), and D4OP, LLC); *see also supra* 30-31.

### E. The district court established reasonable terms for the new receivership.

Barton has not demonstrated that the district court abused its discretion in establishing certain receivership terms. Barton argues (Br. 82-83) that the court improperly "[a]uthoriz[ed] the [r]eceiver to [s]pend [e]state [r]esources to [a]ssist the Commission's [i]nvestigation." But Barton does not identify any such provision in the receivership orders. The receivership orders authorize the receiver to "use reasonable efforts to determine the nature, location, and value of all property interests of the [r]eceivership [e]ntities." ROA.23-11237.14800. And that authorization is reasonable given the receiver's obligation "to manage the

[r]eceivership [e]ntities' properties to preserve and protect the value of such properties." ROA.23-11237.14795.

Barton also complains (Br. 77-78) that the district court did not "set aside a portion of [receivership estate] assets for [him] to pay his defense costs." But the court reasonably found that the receivership, which does not reach Barton's personal assets, was "necessary and appropriate for the purposes of marshaling and preserving all assets of the [r]eceivership [e]ntities." ROA.23-11237.14795. The court was entitled to choose to protect those assets rather than set aside an undefined portion for Barton to use to defend himself from civil and criminal actions based on his misappropriation of those assets. Barton has not demonstrated —either before the district court or on appeal—an unmet need for funds, nor has he even requested the release of a specific amount for that purpose.

Finally, Barton argues (Br. 80) that the district court improperly authorized the receiver to sell receivership assets—with district court approval—prior to final judgment. But there is no prohibition against a receiver selling receivership assets prejudgment. Indeed, were there such a prohibition, this Court would not have needed to suspend in part "the receiver's power to sell or dispose of property belonging to receivership entities" in connection with its vacatur of the first receivership. *Barton*, 79 F.4th at 581. And here, in light of the receivership estate's financial circumstances, such a prohibition would impede the receiver

from taking necessary steps to secure and preserve receivership assets that might otherwise be lost. Finally, the authority on which Barton relies (Br. 80) is inapposite because it does not address sales necessary to preserve receivership estate assets. *See Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (addressing the propriety of receiver liquidations employed as an alternative to bankruptcy); *SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445–46 (D.D.C. 1992) (finding that "[t]he existing freeze on [the defendant's] assets is sufficient to preserve them for future remedies").

## II. The district court acted within its discretion in issuing the preliminary injunction.

Based on "a preponderance of the evidence" "presented to the [c]ourt," including during an hours-long evidentiary hearing, the district court issued an order preliminarily freezing "[a]ll funds, property, or other assets … of any entity that Barton directly or indirectly controls that is not placed in receivership." ROA.23-11237.14825-28. The court concluded that "the SEC ha[d] made a proper showing that, based on proof of past substanti[ve] violations, there [was] a reasonable likelihood that the defendants are engaged or about to engage in practices that violate the federal securities laws." ROA.23-11237.14824 (cleaned up). The court reached that conclusion based on its finding that "there is a reasonable likelihood that defendants, acting with scienter, obtained money from [investors] by making false statements about the use of the investments,

misappropriating the money, misstating land purchase prices, and making false statements about whether the investments were fully guaranteed, in violation of § 17(a) of the 1933 Act and § 10(b) of the 1934 Act and Rule 10b[]-5." ROA.23-11237.14826. And contrary to Barton's insistence (Br. 70-77), the district court correctly determined that the Commission had sufficiently demonstrated that "the loan agreements are securities[.]" ROA.23-11237.14826.

The district court concluded that an asset freeze was "a good idea" because it would "enable both the SEC and the [r]eceiver to investigate and trace [investor funds] to other entities that are subject to the freeze." ROA.23-11237.14825. And it would "protect[] [the court's] ability to provide a recovery for the defrauded investors," particularly given that "[i]t seem[ed] unlikely that the entire value of the assets within the [r]eceivership [would] meet the approximate $26 million that investors lost due to Barton's fraud" and that "without an injunction, it's likely that Barton would further dissipate or conceal assets, limiting recovery for the defrauded investors." ROA.23-11237.14825. Barton fails to demonstrate that the district court abused its discretion in ordering the asset freeze.

### A. The district court correctly concluded that the Commission had sufficiently demonstrated that the loan agreements are securities.

#### 1. The loan agreements are investment contracts under *Howey*.

Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define "security" to include "investment contract[s]." 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). As this Court has explained, "[w]hile Congress defined the term 'security,' it left it to the courts to define the term 'investment contract.' In [*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)], the Supreme Court did exactly that and developed a flexible test for determining whether an investment contract qualifies as a security." *SEC v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019) (cleaned up). In *Howey*, the Supreme Court held that an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 298-99. Under *Howey*, "form [is] disregarded for substance" and "emphasis [is] placed upon [the] economic reality" of the transaction. *Id.* at 298.

Here, each investor invested money via a loan agreement and their money was to be pooled with other investor money (and money from Barton-controlled entities) with the expectation of a return—the invested sum plus interest payments—that was entirely dependent on defendants' management of the

underlying real estate development projects. *See supra* 4. The loan agreements are thus investment contracts under *Howey*.

Barton's assertion (Br. 76) that the "money was simply loaned … for the primary purpose of providing the Chinese national lenders an excuse to move money to the United States" and that "there was no 'common enterprise' into which the lent monies went," contradicts the pitch to prospective investors (*see, e.g.,* ROA.23-11237.271-314) and the loan agreement terms (*see, e.g.*, ROA.23-11237.230-37), both of which provide for invested funds to be pooled and used for real estate development and for investors to receive a return.

Barton also argues (Br. 76) that the loan agreements "were not conditioned on the success" of defendants because "[t]he lenders were entitled to a pre-determined repayment, no matter how [defendants] performed." But that argument runs headlong into the Supreme Court's holding that, under *Howey*, "an investment scheme promising a fixed rate of return can be an 'investment contract' and thus a 'security' subject to the federal securities laws." *SEC v. Edwards*, 540 U.S. 389, 397 (2004). Whether investors received the promised repayment depended entirely on defendants' efforts to identify, purchase, and develop the properties in a manner that permitted the promised payments to be made. That the loan agreements specified fixed returns matters not.

### 2. The loan agreements are notes under *Reves*.

The Securities Act's and the Exchange Act's respective definitions of "security" also include "note[s]." 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). That term does not reach "literally any note" but rather only those "issued in an investment context (which are securities)," as opposed to those "issued in a commercial or consumer context (which are not)." *Reves v. Ernst & Young*, 494 U.S. 56, 62-63 (1990) (cleaned up). The analysis "begin[s] with a presumption that every note is a security," which can be overcome only if the court finds that the note "bears a strong family resemblance" to a category of notes recognized as non-securities because they were issued in commercial or consumer contexts. *Id.* at 65-67. Barton argues that the loan agreements sufficiently resemble "short-term notes secured by a lien on a small business or some of its assets," a category of notes recognized to not be securities, or, in the alternative, should nonetheless be excepted from the presumption that all notes are securities. Br. 72-73 (cleaned up). A straight-forward application of *Reves* proves otherwise.

1. The loan agreements are dissimilar to short-term notes secured by a lien on a small business because "the seller's purpose [was] to raise money for the general use of a business enterprise or to finance substantial investments," not to "facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or

consumer purpose," and the investors were "interested primarily in the profit the note [was] expected to generate." *Reves,* 494 U.S. at 66. Barton's assertions about what might have motivated defendants and investors (Br. 73-74) cannot be squared with the pitch to prospective investors (*see, e.g.,* ROA.23-11237.271-314) or the loan agreement terms (*see, e.g.*, ROA.23-11237.230-37). And those purported motivations, for which Barton identifies no evidentiary support, cannot be ascribed to "a reasonable seller and buyer." *Reves*, 494 U.S. at 66.

2. The loan agreements were subject to "common trading" indicative of a security, and dissimilar to short-term notes secured by a lien on a small business, because they were "offered and sold to a broad segment of the public." *Reves*, 494 U.S. at 66. Defendants widely solicited Chinese investors, including via large group presentations, and ultimately over 100 investors invested. *See, e.g.,* ROA.23-11237.211-12, 271-314. Barton argues (Br. 74) that "all lenders originated from a select group of [defendant Haoqiang] Fu's associates." But "[a] debt instrument may be distributed to but one investor, yet still be a security." *Tr. Co. of Louisiana v. N.N.P. Inc.*, 104 F.3d 1478, 1489 (5th Cir. 1997). And the solicitation of "individuals, not sophisticated institutions … suggest[s] common trading." *Stoiber v. SEC*, 161 F.3d 745, 751 (D.C. Cir. 1998).

3. A reasonable investor would expect the loan agreements to be passive investments. The agreements' terms made clear that the purpose of the investment

was to generate returns for investors through defendants' efforts to acquire and develop real estate. And "[t]he advertisements for the notes … characterized them as 'investments.'" *Reves*, 494 U.S. at 69; *see, e.g.,* ROA.23-11237.271-314 (repeatedly referring to the "investors" and the "investment"). "[I]t would be reasonable for a prospective purchaser to take [defendants] at [their] word," *Reves*, 494 U.S. at 69, even if the loan agreements themselves used the term "loan." The manner and content of the pitch to prospective investors distinguished the investments from short-term notes secured by a lien on a small business.

4. There is "no risk-reducing factor to suggest that these instruments are not in fact securities," *Reves*, 494 U.S. at 69, and Barton does not suggest otherwise. Indeed, *Kirschner v. JP Morgan Chase Bank, N.A.*, 79 F.4th 290 (2d Cir. 2023) (Br. 74) supports the conclusion that these notes are securities. *Kirschner* held that interests in a $310 million syndicated loan offered to certain "sophisticated institutional entities" were not securities given that the lenders signed certifications indicating they did not perceive the loan as a security and bank regulators issued specific guidelines for syndicated term loans that reduced the loan's risk. *Id.* at 306-11. None of those circumstances are present here.

### B. Barton's remaining arguments regarding the preliminary injunction are without merit.

Barton argues (Br. 68-69) that the district court "ignore[ed] the other traditional factors for securing a preliminary injunction." That is incorrect. In

addition to finding that this Court's *First Financial* standard had been met, the court "also [found] that a preliminary injunction [was] warranted because the SEC has established that there is a substantial likelihood of success on the merits that Barton violated the federal securities laws, there will be irreparable harm without the preliminary injunction, the balance of equities favors an injunction, and it is in the public interest to issue a preliminary injunction." ROA.23-11237.14823.[6] The court explained that "[w]ithout an injunction, there is a clear likelihood of irreparable harm to the defrauded investors of further dissipation of assets," "[s]uch dissipation of assets will preclude recovery for the investors—this important interest outweighs any harm that Barton may suffer if he is enjoined from transferring assets," "[a]nd seeking to protect the interests of defrauded investors and uphold federal securities law is in the public interest." ROA.23-11237.14823. Barton does not explain why a preliminary injunction could not issue given these well-supported findings.

[6] Because the district court engaged in such analysis, it is of no consequence whether *Starbucks Corp. v. McKinney*, 144 S.Ct. 1570 (2024), could be read to require courts to apply the traditional four-factor test in determining whether to issue preliminary injunctions in Commission enforcement actions. There is thus no need for this Court to determine whether the *First Financial* standard survives *Starbucks*.

Barton argues (Br. 69-70) that the district court erred in freezing the assets of entities that have not yet been shown to have received or benefited from investor funds because, in Barton's estimation, the Commission should by now know exactly which entities received or benefited from investor funds. But as the court found, "because of Barton's commingling of funds, transferring of properties, and interference with tracing efforts, the SEC and the [r]eceiver haven't been able to trace all entities that have received or benefited from [investor funds]." ROA.23-11237.14825. Thus, the asset freeze was necessary to "enable both the SEC and the [r]eceiver to investigate and trace assets to other entities that are subject to the freeze," ROA.23-11237.14825, and is consistent with this Court's earlier observation that "the SEC could have sought an injunction freezing asset transfers while it traced the funds and determined which entities should be placed in the receivership," *Barton*, 79 F.4th at 580. Indeed, as the district court recognized, the scope of the asset freeze was also necessary to "protect [its] ability to provide a recovery for the defrauded investors" because what was lost to fraud may exceed the receivership estate's value. ROA.23-11237.14825.

Barton fares no better in arguing (Br. 66-67) that the district court erred "in not demanding from the Commission a detailed alleged fact showing that Barton knowingly made a false statement to lenders in procuring the subject loans." The court found "by a preponderance of the evidence … a reasonable likelihood that

defendants, acting with scienter, obtained money from [investors] by making false statements about the use of the investments, … misstating land purchase prices, and making false statements about whether the investments were fully guaranteed." ROA.23-11237.14826; *see also* ROA.23-11237.10424-30 (citing evidence of false statements by Barton). Nothing further was required.

Finally, Barton accuses (Br. 68-69) the district court of ordering the asset freeze "to aid the Commission in winning a case[.]" Such unsupported speculation about the district court's motivation cannot overcome the "presumption" of "fairness," "honesty[,] and integrity" afforded judges. *Bigby v. Dretke*, 402 F.3d 551, 558, 563 (5th Cir. 2005) (cleaned up). The district court made its motivation abundantly clear—the court was animated by the very real concern that "[g]iven Barton's prior conduct, without an injunction, it's likely that Barton would further dissipate or conceal assets, limiting recovery for the defrauded investors." ROA.23-11237.14825. Barton provides no reason to question the sincerity of the court's clearly stated and legitimate concern.

## III. This Court lacks jurisdiction over Barton's interlocutory appeal from orders the district court issued in the course of supervising the new receivership, which, in any event, were all within the district court's discretion.

### A. This Court lacks jurisdiction over Barton's interlocutory appeal from orders the district court issued in the course of supervising the new receivership.

This Court has jurisdiction over "interlocutory orders that fall into specific classes," *Askanase v. Livingwell, Inc.*, 981 F.2d 807, 810 (5th Cir. 1993), including interlocutory orders "granting … injunctions," 28 U.S.C. § 1292(a)(1), and interlocutory orders "appointing receivers," "refusing … to wind up receiverships" or "[refusing] to take steps to accomplish the purposes [of winding up receiverships]," 28 U.S.C. § 1292(a)(2).

But this Court has "refused to find jurisdiction" under Section 1292(a)(2) for "orders issued in the course of a receivership." *Netsphere, Inc. v. Baron*, 799 F.3d 327, 332 (5th Cir. 2015). So have other courts of appeals. *See id.*; *see, e.g.*, *United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 671 (7th Cir. 2014) (finding no jurisdiction under Section 1292(a)(2) for an appeal from "the district court's approval of property sales by the receiver"). That is the "best" "textual reading" of Section 1292(a)(2) and also "makes good sense" because "to conclude otherwise would mean that virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable" and "[s]uch a piecemeal approach to the appellate process would be disruptive and costly, both to the parties and the

courts." *Netsphere*, 799 F.3d at 332-33 (cleaned up). Thus, orders the district court issues in the course of supervising the receivership are not appealable under Section 1292(a)(2).

Barton argues (Br. 1) that *United States v. "A" Manufacturing Co., Inc.*, 541 F.2d 504 (5th Cir. 1976), provides jurisdiction for his interlocutory appeal from the orders authorizing the sales of Amerigold Suites, Rock Creek, and Frisco Gate.[7] *"A" Manufacturing* held that interlocutory appellate jurisdiction existed under Section 1292(a)(2) for an appeal from an order confirming a receiver's sale of property. 541 F.2d at 505-06. But as this Court recognized in *Netsphere*, that holding conflicted with this Court's precedent and is therefore not binding. 799 F.3d at 334 (citing *Belleair Hotel Co. v. Mabry*, 109 F.2d 390 (5th Cir. 1940), and *Wark v. Spinuzzi*, 376 F.2d 827 (5th Cir. 1967), both of which predate *"A" Manufacturing*). The Eleventh Circuit, which is also bound by non-abrogated Fifth Circuit decisions from that period, agrees, recognizing that "*'A' Manufacturing* is

[7] The Commission incorporates by reference the arguments of its motion to dismiss that appeal for lack of jurisdiction. App. Dkt. 21 (No. 24-10004); App. Dkt. 35 (No. 23-11237). This Court ordered the motion to be carried with the case. App. Dkt. 35 (No. 24-10004).

in significant tension with even earlier decisions of our predecessor Court." *Acheron Cap. Ltd. v. Mukamal*, 22 F.4th 979, 993-94 (11th Cir. 2022).[8]

Barton's suggestion (Br. 1) that this Court should exercise pendent jurisdiction fares no better because it is "only proper in rare and unique circumstances where a final appealable order is inextricably intertwined with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order." *Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336–37 (5th Cir. 2022) (cleaned up). But here, "[t]he factors considered in reviewing" the supervisory orders on appeal "are entirely distinct from the factors considered in reviewing" the receivership and preliminary injunction orders on appeal and this Court "need not consider" the supervisory orders "in order to address" the receivership and preliminary injunction orders. *Id.* at 337.[9]

---

[8] Barton also invokes (Br. 1) *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57 (2020), but that case addressed the jurisdiction of the Puerto Rico Court of First Instance following removal to the U.S. District Court for the District of Puerto Rico, not whether there is interlocutory appellate jurisdiction for district court orders issued in the course of supervising a receivership, much less whether such jurisdiction exists in the face of Section 1292(a)(2).

[9] Barton's appeal from the order approving the sale of Amerigold Suites is also moot because the sale will not close as "the title company [is] unwilling to issue a title policy with the appeal [of the order] pending" and "[t]he purchaser [is] no longer willing to close the transaction because of the continued uncertainty

### B. Each of the appealed-from orders the district court issued in the course of supervising the new receivership was within the district court's discretion.

Even if this Court were to review the supervisory orders, Barton fails to demonstrate that the district court abused its discretion in issuing any of them.

The district court sought to ensure a smooth transition from the first receivership to the new receivership, by, for example, ratifying the receiver's possession of materials obtained during the first receivership and ratifying and adopting *nunc pro tunc* orders that the court issued during the first receivership. ROA.23-11237.14835-43. Barton mistakenly argues that the ratification order improperly ratified "[v]acated [r]eceivership [s]ale [o]rders." Br. 79-80; *see* Br. 86. The court did not ratify any sale orders, but merely ratified orders issued during the first receivership that approved the receiver's settlement of claims. ROA.23-11237.14837; *see* ROA.23-11237.2824-25, 7474-76. And although Barton claims (Br. 81) that the court "did not undertake a fresh appraisal of the evidence, or give [him] an opportunity present any" before ratifying those orders,

---

surrounding the transaction and what it believes is a much more buyer-friendly market today compared to when it first contracted to purchase." Dkt. 500 at 5. The receiver is therefore seeking the district court's approval to sell Amerigold Suites to a new purchaser. *Id.* at 6-7.

Barton presented no such evidence when he had the opportunity to do so. *See* ROA.23-11237.14360-70.[10]

Nor was the district court's ratification of those settlement orders "inappropriate" (Br. 79) in light of this Court's vacatur of the first receivership. In doing so, this Court suspended "the receiver's power to sell or dispose of property belonging to receivership entities, including the power to complete sales or disposals of property already approved by the district court" but clarified that "[the] suspension does not apply to activities in furtherance of sales or dispositions of property that have already occurred or been approved by the district court." *Barton,* 79 F.4th at 581-82. If this Court intended to void prior orders authorizing the receiver's actions, those provisions would have been superfluous at best.

That vacatur of a receivership order does not, without more, void district court orders approving a receiver's actions taken thereunder is also evident from *Netsphere*. While this Court vacated a district court order appointing a receiver over an individual's entities and assets, which included internet domain names,

[10] Barton's brief does not explain why he believes the ratified settlement orders were in error. Rather, he incorporates by reference (Br. 81) his briefing from his appeals from those orders. To the extent this Court reaches those arguments, the Commission likewise incorporates by reference its briefing from Barton's appeals from those orders. App. Dkt. 40 (No. 22-11242); App. Dkt. 67 (No. 23-10516).

*Netsphere*, 703 F.3d at 301-05, "[t]he district court orders that were in place prior to [vacatur of the receivership order] remain[ed] in place," *In re Baron*, 593 F. App'x 356, 358–59 (5th Cir. 2014) (cleaned up). This Court did not, for example, reverse or vacate district court orders authorizing the receiver's sale of domain names. *See Associated Recovery L.L.C. v. Does 1-44*, 769 F. App'x 160, 162 (5th Cir. 2019) ("In *Netsphere*, although this court reversed the receivership, we did not reverse the sales of domain names.").

That makes sense. If administrative receivership orders were subject to retroactive displacement in the way Barton claims, third parties would be less inclined to enter into agreements with receivers that require district court authorization. Agreeing with Barton that vacatur of an order establishing a receivership automatically nullifies court orders authorizing actions under that receivership would thus undercut "[t]he primary purpose of the equitable receivership[,] the marshaling of the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities." *Stanford*, 927 F.3d at 840.

Barton argues (Br. 81-82) that the district court erred in approving the sales of Amerigold Suites, Rock Creek, and Frisco Gate because, he asserts, the court failed to account for "changed market factors" since it had approved those sales during the first receivership. That is incorrect—the court specifically considered

changes in market conditions and approved each sale only after concluding that it satisfied all statutory requirements and was in the best interest of the receivership estate. ROA.24-10004.15098-99, 15100-01, 15102-03, 15783-87, 15800-03, 15818-19. Indeed, evidence showed that market conditions had deteriorated since the prior approvals (ROA.24-10004.13919), which only reinforced the court's conclusion that the sales were in the receivership estate's best interest.

Barton also argues (Br. 82) that the district court should not have approved the sales while Barton's appeal of the receivership orders is pending. The district court approved the sales because they were in the receivership estate's best interest. And to the extent Barton wished to have his appeal of the receivership orders decided before the sales close, the appropriate course would have been to seek a stay of the sale orders, which Barton has not done.

## IV. Barton provides no justification for the extraordinary remedy of reassigning the case on remand.

Barton offers little more than mere disagreement with certain of the district court's decisions in support of his request (Br. 83-85) for the "extraordinary and rarely invoked" remedy of reassignment on remand. *Fort Bend Cnty. v. United States Army Corps of Engineers*, 59 F.4th 180, 202 (5th Cir. 2023) (cleaned up). In deciding whether to reassign a case, this Court applies both a "stringent test," which "considers three factors: (1) whether the original judge would reasonably be expected to have difficulty putting aside previous views determined on appeal to

be erroneous, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness," and a "lenient test," which "asks whether an objective observer would reasonably question the judge's partiality." *Id.* (cleaned up). Under either test, reassignment is unwarranted.

This is not a case in which the district court "failed to carry out the mandate of the court of appeals on remand." *Cooper Tire & Rubber Co. v. Farese*, 248 F. App'x 555, 561 (5th Cir. 2007). Rather, the record indicates that Judge Starr has followed, and will continue to follow, this Court's "marching orders." ROA.23-11237.14773. Nor is this a case in which the court appears to have "pre-judged the case against [Barton] from the outset." *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 495–96 (5th Cir. 2022). The court has not, for example, "stymied [Barton's] legitimate requests to engage in critical discovery" or made "gratuitous comments" regarding Barton. *Id.* at 496. Indeed, the court has denied certain relief sought by the Commission and the receiver and has affirmed its impartiality, stating, for example, that "I want to preserve [receivership assets] as much as possible for either a return to Barton, if he wins, or sending back to the … investors, if Mr. Barton loses." ROA.24-10004.15785:1-5. Finally, this is not a case that has "barely started." *Pulse Network*, 30 F.4th at 497. The district court

docket—stretching past 500 entries—reflects dozens of substantive orders and numerous hearings. Far from being in the interests of justice, then, reassignment would entail disproportionate waste and duplication. Barton's request should be denied.

## CONCLUSION

The receivership orders and the preliminary injunction order should be affirmed. Barton's appeal from orders the district court issued in the course of supervising the receivership should be dismissed. This case should not be reassigned on remand.

Respectfully submitted,

MEGAN BARBERO
*General Counsel*

DOMINICK V. FREDA
*Assistant General Counsel*

*/s/ Ezekiel L. Hill*
EZEKIEL L. HILL
*Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.7724 (Hill)
hillez@sec.gov

July 22, 2024

**CERTIFICATE OF SERVICE AND FILING**

I certify that on July 22, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit through the Court's CM/ECF system. Service on counsel of record will be accomplished through the Court's CM/ECF system.

I further certify that this electronic filing is an exact copy of the paper document, that any privacy redactions have been made, and that this electronic filing was scanned for, and found to be free of, viruses.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill

Dated: July 22, 2024

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,696 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I further certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style, 14-point typeface.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill

Dated: July 22, 2024